HATTIE M. FERGUSON *v.* SALLY C. BOBO.

54   121
84   235

54   121
f88   673

54   121
c95   567
95   572

1. FRAUDULENT CONVEYANCE.  *Bill to set aside.  Allegations.*

A bill in chancery is not good as an attempt to set aside a fraudulent conveyance procured by a debtor to be made to his daughter, if it neither alleges that there is a judgment against the father, nor that the debt due at the time the conveyance was made is still due, and fails to pray for such relief.

2. SAME.  *Equitable assets.  Remedy of creditor.*

A conveyance to a third person at the instance of the debtor, who pays the purchase-money, vests no title in the debtor which can be sold on execution.  It must be attacked in equity after recovery of a judgment.  *Carlisle* v. *Tindall*, 49 Miss. 229, cited.

3. SAME.  *Effect of conveyance by debtor to creditor.*

If, in such case, the debtor should voluntarily make to the judgment creditor a conveyance of the land, a court of equity would perhaps compel the fraudulent holder of the legal title to make a conveyance also.  It is much more doubtful whether a creditor at large, who has received such a conveyance from the debtor in payment of a debt which has not been reduced to judgment, can maintain such a bill.

4. INFANT'S LIABILITY AT LAW.  *Contracts and torts.*

The liability of infants in courts of law on contracts and for torts discussed, the principles announced and authorities cited.

5. SAME.  *General rule.*

An infant's contracts, except for necessaries with which his guardian has not supplied him, impose on him no liability not voidable at his election; *aliter*, as to his trespasses and frauds.

6. SAME.  *Rule established by weight of American authority.*

In actions at law based upon a contract, it is no answer to a plea of infancy that the infant, at the time of entering into the contract, fraudulently represented himself to be of full age, and thereby deceived the other party; nor can any action brought by the other party, which is based upon the contract, be supported or helped by an averment of such representation, or of any other frauds or deceits.  But infants are liable for frauds and torts to the same extent as adults; and, where actions *ex delicto* are brought to make them answerable therefor, they cannot escape the consequences of their acts by reason of the fact that the tort or fraud was connected with a contract, unless it constituted the consideration of it.

7. SAME.  *Age of infant.*

In all cases the infant must have arrived at such years of discretion that fraud may fairly be imputed to him.

8. SAME.   *Receipt to executor by infant legatee.*

A receipt in full, given by an infant legatee to the executor of his father's will, does not preclude him from showing that more was due. *Overton* v. *Banister*, 3 Hare, 503. But in cases where the infant has arrived at years of discretion, and his minority was unknown to the executor, he must account for what he has received. *Quinn* v. *Moss*, 12 S. & M. 365, so far as it holds the contrary, disapproved.

9. SAME.   *Suit for property sold.*

An infant, suing for the recovery of property, real or personal, sold by him, must account for the price received.

10. INFANTS IN EQUITY.   *Estoppel.*

Whenever an infant, who has arrived at years of discretion, by direct participation, or by silence when he was called upon to speak, has entrapped a party, ignorant of his title or of his minority, into purchasing his property from another, he will be estopped in a court of chancery from setting up such title.

11. SAME.   *Case in judgment.*

A female infant, nineteen years of age, knowing her rights, conveyed land to her father, for the purpose of enabling him to borrow money by giving a mortgage thereon to one who was ignorant of her minority. The money was loaned; and, subsequently, the lender being still ignorant of her minority, the father conveyed the land to pay the debt. The infant, arriving at full age, brought ejectment. *Held*, that a court of equity would restrain her from asserting her legal title and thus perpetrating a fraud.

12. SUPREME COURT.   *Practice on reversal.*

On reversing a decree for the defendant in a chancery suit, it being suggested that the pleadings do not so raise the question on which it is reversed as to advise the defendant that the complainants rested their case upon said question, and that, therefore, no proof was taken thereon, the case is remanded, with leave to both sides to amend their pleadings and take further testimony.

APPEAL from the Chancery Court of Claiborne County.

Hon. E. G. PEYTON, Jr., Chancellor.

*E. S. Drake*, for the appellant.

1. The court had jurisdiction of the bill to declare and establish the trust in the lands. *Healey* v. *Alston*, 25 Miss. 190; *Wilson* v. *Beauchamp*, 44 Miss. 556; Code 1871, § 2896; *Roach* v. *Bennett*, 24 Miss. 98; *Carpenter* v. *Bowen*, 42 Miss. 28; *Cassedy* v. *Jackson*, 45 Miss. 397; *Wilson* v. *Beauchamp*, 50 Miss. 24. The fact that Mrs. Bobo was an infant at the time of the transactions, will not prevent the court from estab-

lishing the trust. The fact that the land was purchased with the means of the indebted father, and title made to the daughter, gives the jurisdiction. An infant may be a trustee. 1 Perry on Trusts, §§ 33, 52–54; Fonblanque's Eq. 4084, notes; *Commissioners of Sinking Fund* v. *Walker*, 6 How. (Miss.) 143.

2. On another ground the court had jurisdiction. The taking of the conveyance in the name of the defendant was for the purpose of defrauding the creditors of Robbins. It was void as to creditors. The term " creditors " in the Statute of Frauds does not apply solely to judgment creditors. Code 1857, art. 2, p. 358; Code 1871, § 2893; 40 Miss. 517. As to the construction of the Statute of Frauds, see Bump on Fraudulent Conveyances, 59. Being fraudulent and void, a trust results for the creditors. 1 Perry on Trusts, §§ 149, 164, 165. The fact that the fraudulent grantee was an infant makes no difference. *Commissioners of Sinking Fund* v. *Walker, ubi supra.*

3. Again, the Chancery Court has jurisdiction to enjoin the plaintiff in ejectment, under a state of facts like that in the case at bar. The creditor took a conveyance of the property in part payment of her debt, from one having the entire equitable title, and the apparent legal title, by an act of the plaintiff in ejectment, without knowledge of the outstanding legal title. Will not equity interpose to prevent the defendant, who holds the naked legal title, itself the creature of fraud, from dispossessing the complainant, a purchaser for value without notice?

4. The learned counsel, having thus disposed of the question of jurisdiction, discussed at length the facts of the case, showing that each allegation of the bill was supported by the testimony of two or more witnesses, and concluded, that, in view of all the facts and the law, this court cannot hesitate to enter a decree perpetually enjoining the judgment in ejectment.

*J. D. Vertner,* for the appellee.

1. The bill cannot be sustained as asking relief against the fraud of an infant. It has not the necessary allegations. The only fraud possible in the premises, against which relief could

be granted, would be in Mrs. Bobo having persuaded Hattie M. Ferguson or Elisha Robbins that she was of age at the date of her conveyance to Robbins. The bill does not charge such fraud in either instance. If charged as to her father, it would tax credulity.

2. It cannot be sustained as assailing a conveyance void for fraud as to creditors under the Statute of Frauds, because the father never had the legal title. *Carlisle* v. *Tindall*, 49 Miss. 229. Moreover, Mrs. Ferguson is not a creditor, nor does she complain as such.

3. Nor can it be regarded as good to enforce a trust in the land. Mrs. Ferguson has no judgment, and the bill is not framed with any such relief in view.

4. Counsel then reviewed the facts, contending that the case was not made out on the evidence, and concluded that, whatever the facts may be, the complainant has clearly mistaken her remedy, and is entitled to no relief on the allegations of the bill.

CHALMERS, J., delivered the opinion of the court.

The bill is filed to enjoin an action of ejectment, or rather to prohibit the issuance of a' writ of *habere facias* upon judgment in ejectment, and to compel the plaintiff in said judgment to file a perpetual *cesset processus*.

The facts are these: In June, 1868, Elisha Robbins bought from one Rucker a tract of land in Claiborne County, consisting of two hundred and ninety acres, known as " Hunter's Rest ; " paid for it with his own means ; and, for the purpose of defeating certain creditors residing in the State of Indiana, whose claims he anticipated would be sent for collection to this State, had title made to his daughter Sally, at that time in her nineteenth year. He avowed this purpose to a few confidential friends, stating that his daughter would convey to himself, or to whomsoever he might designate, whenever requested. He owed at this time. to the complainant and appellant, Mrs. Hattie M. Ferguson, $1,300 borrowed money, and seems to have had no intention of defeating this debt. In September following, desiring to borrow more money from her, and to secure the same, he caused his daughter to convey

to himself the land in question, sending the chancery clerk to his house to take her acknowledgment. The clerk fully explained to Sally that her father desired the land conveyed to himself, in order that he might mortgage it, and thereby borrow money on the faith of it. She executed the conveyance without the slightest objection. Thereupon Mrs. Ferguson loaned to the father $2,000 additional, taking a mortgage on this and some other lands owned by him; and a few months thereafter she loaned him another sum of $2,000, and took an additional mortgage on the same lands. In May, 1869, six months after the conveyance from Sally to her father, Robbins borrowed $4,000 more from Mrs. Ferguson. The entire amount which he then owed her was consolidated into one note for $7,500; the two mortgages, which had never been recorded, were surrendered, and a new mortgage to protect this total indebtedness was executed on all the lands embraced in the former mortgages, including " Hunter's Rest," and upon some town property in Port Gibson, besides a lot of personal property. About eighteen months thereafter, to wit, in November, 1871, Robbins, becoming satisfied of his inability to repay these sums, conveyed to Mrs. Ferguson, in fee-simple, the " Hunter's Rest " tract, and two hundred acres adjoining it, at the price of $5,500, for which amount a credit was entered upon the note. Mrs. Ferguson took possession at once. Robbins died a few months thereafter, and in July, 1872, his daughter Sally, who in the mean time had intermarried with one Bobo, brought ejectment for the recovery of the " Hunter's Rest " tract. The strength of her legal title consisted in the fact that she was only nineteen years and three months old at the date of her conveyance to her father, and, however voidable her own original title from the vendor Rucker might be as against the existing creditors of her father, it was good against the father himself, and all subsequent grantees from him. The legal title, therefore, conveyed to her by Rucker, having never been divested out of her by her conveyance during infancy, must prevail at law over Mrs. Ferguson's deed from the father.

On this state of facts the bill was filed to enjoin a prosecution of the action of ejectment, but, the Chancellor having

compelled the complainant to submit to a judgment at law, it was subsequently prosecuted to restrain any execution thereon. The bill averred ignorance on the part of the complainant as to the minority of the defendant; and this is not denied, and is rendered of itself probable, from the fact that Mrs. Ferguson had been but a short time a resident of the county. It also charged that the defendant was privy to her father's scheme to defeat his creditors in taking the title to herself, and that she thereby intended to aid and abet said scheme. The answer denied that there was any such purpose, and averred that the land was purchased with the money of the daughter, which had been specially sent to her for that purpose by her maternal grandmother, who had formerly resided in Iowa, but who was then believed to be dead. The same thing is set forth with great particularity and minuteness of detail in the deposition of the defendant and of her mother, but was eventually proved to be shockingly false by the deposition of the grandmother, who was found still living in some obscure portion of Iowa, and who testified that she had never sent her granddaughter a dollar, nor had she heard from, or had any communication with, the Robbins family for a great number of years.

All the facts charged in the bill were undoubtedly proved, if we except the allegation that the daughter knew of the father's indebtedness at the date of the purchase; but the Chancellor denied relief, and dismissed the bill, upon the ground that nothing had been charged or proved which could justify the interference of a court of equity.

The bill does not set forth the particular aspect with which it is framed, and cannot be supported on several of the grounds upon which it is sought to be upheld here. For instance, it is not good as an attempt to set aside the fraudulent conveyance from the original vendor, Rucker, to the daughter, because there is no judgment against the father, nor is any such relief prayed for, nor is there any allegation that the debt of $1,300, due at the time the conveyance was made, and as to which alone it was fraudulent, is still due, or was liquidated by the conveyance of the land to the complainant.

Nor is it possible to maintain it upon the idea, most strongly

pressed by counsel, that inasmuch as the title was equitably and beneficially in the father, and the complainant now holds a deed from him, a court of equity will draw to this title that legal title which is fraudulently outstanding in the daughter. It was ruled in *Carlisle* v. *Tindall*, 49 Miss. 229, that the debtor, in a case like this, had no title which could be sold under execution, and that a purchaser at such sale could not maintain a bill to cancel the outstanding fraudulent legal title. This was upon the ground that conveyances to a third person, at the instance of the debtor, where the money is paid by the latter, are not within the Statute of Frauds, and must be attacked in equity, after the recovery of a judgment. If in such case the debtor should voluntarily make to the judgment creditor a conveyance of the land, it may be that a court of equity would compel the fraudulent holder of the legal title to make conveyance also. Whether a creditor at large, who had received such a conveyance from the debtor, in payment of a debt which had not been reduced to judgment, could maintain such a bill, is much more questionable, but is not necessary to be here decided, because it affirmatively appears that the note, in part payment of which the conveyance was received by Mrs. Ferguson, did not embrace any portion of the debt existing at the date of the fraudulent conveyance to the daughter, but was wholly made up of the indebtedness accruing thereafter.

It only remains to consider whether the bill charges and the facts show a case of such fraud upon the part of the infant as will justify a court of equity in prohibiting an assertion by her of her legal title.

Two principles, equally ancient and equally well settled with respect to the contracts and liabilities of infants, and which, as abstractly stated, seem not antagonistic, have been found in practice to produce two conflicting lines of decision, which it is difficult to reconcile ; or rather it is difficult to determine satisfactorily where one ends and the other begins. 1. The contracts of infants, except for necessaries with which they have not been supplied by their guardians, impose no liability upon them which is not voidable at their election. 2. Infancy is a shield, and not a sword, and cannot be set up to defeat liability for torts, trespasses or frauds.

To give to each of these principles its appropriate force, and to prevent one from trenching upon the other, has been frequently found a matter of such difficulty, that many courts have either expressly denied or silently ignored the doctrine that an infant can be held liable in a court of law for a fraud or deceit in any manner connected with a contract; limiting such liability to acts of trespass, or pure torts, properly so called. They neither allow an action at law brought by the infant to be defeated, nor do they permit a judgment to be rendered against him, by reason of any cheat, fraud or falsehood perpetrated or uttered by him in the course of contracts which he has entered into. They take the broad ground that the invalidity of his contracts is a mantle of protection thrown around him by the law, and of which all persons dealing with him must take notice; that neither an honest belief by the opposite party that he is of full age, nor a false affirmation to the same effect by himself, can change the result, since the incapacity to bind himself springs not out of the belief of either of the contracting parties upon the subject, but upon the existence of the fact of minority. They argue, therefore, that to hold the infant liable for or estopped by any fraud or falsehood, in any manner connected with the contract, whether before or at the time of making it, is to deprive him of the shield which the law has given him in consideration of his ignorance and inexperience.

All the cases holding this doctrine may be traced back to *Johnson* v. *Pie*, decided in 17 of Charles II., and reported in 1 Lev. 169. That was an action on the case, "for that the defendant, being an infant, affirmed himself to be of full age, and by means thereof the plaintiff lent him £100, and so he had cheated the plaintiff by this false affirmation." After verdict for plaintiff, motion in arrest of judgment was made, upon the ground that action "would not lie for this false affirmation." Counsel cited *Grove* v. *Nevill*, 16 Car. II. Rot. 400, decided the previous year, in which it had been ruled that an action would not lie against an infant for selling a false jewel, affirming it to be a true one. To which it was answered, that this was an action of trespass on the case, and that an infant was chargeable for trespasses, though not for contracts. The

judges divided. Two of them thought that the motion in arrest should be sustained, because the affirmation of an infant was void. The third judge would have denied the motion, likening the false affirmation to a trespass, or to cheating with false dice. The motion in arrest was afterwards sustained. 1 Keble, 905.

As before remarked, this judgment has formed the basis of a long line of decisions in England and America, substantially denying any redress in a court of law against the fraudulent conduct of infants in any manner connected with a contract. McPherson on Infancy, 482; *Jennings* v. *Rundall*, 8 T. R. 335; *Brown* v. *Dunham*, 1 Root, 272; *West* v. *Moore*, 14 Vt. 447; *People* v. *Kendall*, 25 Wend. 399; *Price* v. *Hewett*, 8 Exch. 146; *Penrose* v. *Curren*, 3 Rawle, 351; *Wilt* v. *Welsh*, 6 Watts, 9; *Brown* v. *McCune*, 5 Sandf. (N. Y.) 224; *Norris* v. *Wait*, 2 Rich. Law, 148.

The other class of decisions to which we have alluded fully recognizes the non-liability of an infant upon his contracts, but they draw a distinction between holding him upon the contract and estopping him, or making him responsible for his frauds, deceits and falsehoods, in matters connected with but not forming a constituent part of it. They say that the action brought, or the defence set up, against him must sound in tort, and not in contract; and, if it does sound in tort, it will not be defeated, although the deceit complained of was connected with the contract. Some of these cases repudiate the authority of *Johnson* v. *Pie, ubi supra*, and say that the case of *Grove* v. *Nevill*, referred to above, and relied upon by counsel in that case, was not in point, because the action, brought for the affirmation that the false jewel was a true one, was but an action upon the warranty, which necessarily is an action upon the contract, whereas the action for the false affirmation by the minor that he was adult, while it induced the opposite party to enter into the contract, formed no part of it. Thus, in *Fitts* v. *Hall*, 9 N. H. 441, an infant had bought a lot of hats, for which he executed his note. Upon suit brought upon the note he successfully interposed the plea of infancy. An action was then brought against him for the deceit practised in affirming at and before the purchase that

he was an adult; and this was maintained in an elaborate opinion, reviewing the cases to some extent, and expressly disapproving of *Johnson* v. *Pie*. But, in *Prescott* v. *Norris*, 32 N. H. 101, the Supreme Court of the same State, while citing *Fitts* v. *Hall* with seeming approbation, held that an infant, who had sold and warranted a barrel of gin as being pure, could not be held liable for a false warranty, because that was a part of the contract. So, too, in South Carolina, while in the case cited above of *Norris* v. *Wait* it was said that an infant could not prejudice his rights in a court of law by neglecting to state his title to the purchaser of his property from another, yet, in the same State it was held, in *Vance* v. *Word*, 1 Nott & McCord, 197, that infancy was no defence to an action for a deceit practised in selling a horse.

As shadowy and confusing as this distinction between non-liability on the contract and liability arising from some fraud practised in connection with it may sometimes become, it has received, in some shape, the support of a very large number of courts, and of many of the most eminent commentators, and may be said to be sustained by the weight of American, if not of English, authority.

The Supreme Court of Massachusetts went to the length of holding that, where goods had been obtained by a minor upon the false affirmation that he was of age, the fraud vitiated the contract, that no title ever vested in the minor, that he might be treated as having unlawfully converted them, and might be sued in trover or replevin. *Badger* v. *Phinney*, 15 Mass. 359. This doctrine is expressly sanctioned by Judge Story. Story on Contracts, §§ 107, 111.

Kent declares that "infants are liable in actions *ex delicto*, whether founded on positive wrongs, as trespass or assault, or constructive torts or frauds." He warns us, however, that the act must be wholly tortious, and that "a matter arising *ex contractu*, though infected with fraud, cannot be changed into a tort in order to charge the infant in trover or case by a change in the form of the action." 2 Kent Com. 241. The warning is salutary; but whether it can always be heeded, and the proper line of distinction observed, is somewhat doubtful.

In the American notes to the case of *In re King*, 68 Eng.

Ch. 62, s. c. 3 De Gex & J. 63, there is a summary of what
seems to us, from a somewhat extended examination of the
cases, to be the rule established by the great weight of Ameri-
can authority.   It may be thus stated: In actions at law
based upon a contract, it is no answer to a plea of infancy
that the infant, at the time of entering into the contract,
fraudulently represented himself to be of full age, and thereby
deceived the other party; nor can any action brought by the
other party, which is based upon the contract, be supported or
helped by an averment of such representation, or of any other
frauds or deceits.   But infants are liable for frauds and torts
to the same extent as adults, and where actions *ex delicto*
are brought to make them answerable therefor, they cannot
escape the consequences of their acts, by reason of the fact
that the tort or fraud was connected with a contract, unless it
constituted the consideration of it.   Wherever it does con-
stitute the basis of the contract, as in an action for a breach
of a fraudulent warranty, then the warning of Chancellor
Kent, against being deceived by a mere change in the form of
action, will apply.

These principles find illustration in the following among
many other cases : *Humphrey* v. *Douglass*, 10 Vt. 71 ; *Lewis* v.
*Littlefield*, 15 Maine, 233 ; *Wallace* v. *Morss*, 5 Hill (N. Y.),
391 ; *Walker* v. *Davis*, 1 Gray, 506 ; *Homer* v. *Thwing*, 3 Pick.
492 ; *Vasse* v. *Smith*, 6 Cranch, 226 ; *Burley* v. *Russell*, 10
N. H. 184 ; *Kilgore* v. *Jordan*, 17 Tex. 341 ; *Fish* v. *Ferris*,
5 Duer, 49 ; *Norris* v. *Vance*, 3 Rich. 164 ; Reeve on Domestic
Relations, 259 ; *Towne* v. *Wiley*, 23 Vt. 355 ; *Elwell* v. *Martin*,
32 Vt. 217 ; *Oliver* v. *McClellan*, 21 Ala. 675.

Some of these cases seem to verge too strongly on contract
to be maintainable as torts or trespasses.   Especially is this
true of the cases of *Fitts* v. *Hall* and *Vance* v. *Word, ubi supra*,
which are pronounced unsound by the editors of American
Leading Cases, vol. i. (4th ed.) 261, 262.   It is admitted,
however, that a distinct and wilful tort may be made the basis
of a suit against an infant, though it grows out of a contract,
provided the plaintiff is not forced to rest the liability upon
the contract.

*Vasse* v. *Smith, ubi supra*, is usually considered the leading

American case, and perhaps illustrates as clearly as any other
the proper limits of the doctrine. An infant was intrusted
with a consignment of flour to transport to and sell at Nor-
folk. In violation of his instructions, he forwarded it to the
West Indies, in the name of his father, and it was lost on the
voyage. Suit was brought, and the declaration contained two
counts : 1st, for a breach of orders and consequent loss ; 2d,
in trover for a conversion. Marshall, C. J., speaking for
the court, declared that the first count could not be main-
tained, because it was substantially in contract; but that the
second could, because, although the infant had received the
flour under a contract, yet the shipment to the West Indies,
in the name of his father, was a conversion, which was no part
of the contract, though growing out of it. Perhaps the doc-
trine cannot be more accurately stated than in this case, and
within its principle each case must depend upon its own
features, the cardinal idea being that the liability springs from
the fraud or tort, and not from the contract. It is, of course,
understood in all the cases that the infant has arrived at such
years of discretion that fraud may fairly be imputed to him,
or as Lord Cowper expresses it, in *Watts* v. *Creswell*, 9 Vin.
Abr. 415, s. c. 3 Eq. Cas. Abr. 515, "If an infant is old
enough and cunning enough to contrive and carry out a fraud,
he ought to make satisfaction for it."

This distinction between the contracts and frauds of infants
was adverted to by us in the case of *Upshaw* v. *Gibson*, 53
Miss. 341, and it was there intimated that, in a proper case,
we might be prepared to follow it. It is to be remarked that
neither that case nor the one at bar requires a decisive posi-
tion to be taken by us on this vexed question ; but as it is
likely frequently to arise, and has never undergone a thorough
examination in this State, it was thought well to group some
of the conflicting decisions, and ascertain, if possible, the exact
line of demarcation between them.

In *Hill* v. *Anderson*, 5 S. & M. 216, it was declared that an
infant vendor may recover back his property, real or personal ;
but in such cases he must refund what he has received. In
*Quinn* v. *Moss*, 12 S. & M. 365, this doctrine, it was said,
would not apply to the reception of a legacy by an infant from

the executor of his father's will, but that the infant could, in such case, compel a second payment in full.  If the infant had arrived at years of discretion, and his minority was unknown to the executor, we cannot see why the same duty of accounting for what he had received would not exist, as to a legacy, as exists in relation to the sale of his property.  We think the better rule is announced in *Overton* v. *Banister*, 3 Hare, 503, where it was said that the receipt in full, executed by the infant legatee, would not preclude him from showing that more was due, but that he must account for what he had received. A different rule would prevail, if it was shown that the executor knew of the minority.  The authorities seem to be uniform, that an infant suing for the recovery of property, real or personal, sold by him, must account for the price received. 2 Kent Com. 241, and authorities cited.

Turning from courts of law to those of equity, we find the law of estoppel, as applicable to the contracts of infants, on a much more satisfactory and clearly defined footing.  From the earliest times it has been held that infants will be estopped by a court of chancery from asserting title to property where, either by their silence or their active interference, they have entrapped third persons into purchasing it from others, or into advancing money upon it.

Thus, in *Savage* v. *Foster*, 9 Mod. 35, in 9 of Geo. I., it was said : " Now, when any thing in order to a purchase is publicly transacted, and a third person knowing thereof, and of his own right to the lands intended to be purchased, doth not give the purchaser notice of such right, he shall never afterwards be admitted to set up such right to avoid the purchase ; for it was an apparent fraud in him not to give notice of his title to the intended purchaser : and in such case infancy or coverture shall be no excuse ; for though the law prescribes formal conveyances and assurances for the sales and contracts of infants and *feme coverts*, which every person who contracts with them is presumed to know, and if they do not take such conveyances as are necessary, they are to be blamed for their own carelessness, when they act with their eyes open ; yet when the right is secret, and not known to the purchaser, but to themselves, or to such others who will not give the pur-

chaser notice of such right, so that there is no laches in him, this court will relieve against that right;" "neither is it necessary that such infant or *feme covert* should be active in promoting the purchase, if it appears that they were so privy to it that it could not be done without their knowledge."

In *Evroy* v. *Nicholas*, in 6 of Geo. II. (reported in 2 Eq. Cas. Abr. 488, 489), an infant who had put his signature as a subscribing witness to a lease of his realty for twenty-one years, executed by one who assumed without authority to act as his guardian, was thereby held estopped. In *Drury* v. *Drury*, 2 Eden, 39, Lord Chancellor Northington held that a female infant who accepted a marriage settlement, by which she obtained a jointure by way of annuity, in lieu of dower in her husband's estate, was not thereby estopped to claim dower after her husband's death. But Mrs. Drury having subsequently intermarried with the Earl of Buckinghamshire, an appeal was prosecuted to the House of Lords, and the decision was reversed, opinions being delivered by Lords Hardwicke and Mansfield, both of whom held her bound, upon the ground that the contrary doctrine would amount to a fraud upon the intended husband. Lord Mansfield made, in this case, the noted remark, that he "never would put such an exposition on the law, as to make it necessary to apply to Parliament to rectify it." *Earl of Buckinghamshire* v. *Drury*, 2 Eden, 60, 74. His lordship seems not to have been afraid of the reproach of manufacturing law, instead of expounding it, but to have been of opinion that the common law and equity jurisprudence of England were expansive systems, which contained within themselves the germs of a progress which made them equal to all the developments of human affairs.

· It may be stated as a general proposition, fully borne out by the authorities, that whenever an infant who has arrived at years of discretion, by direct participation, or by silence, when he was called upon to speak, has entrapped a party, ignorant of his title or of his minority, into purchasing his property from another, he will be estopped in a court of chancery from setting up such title. Sugden on Vendors, 507, 508; *Watts* v. *Creswell*, 9 Vin. Abr. 415; *Cory* v. *Gertcken*, 2 Madd. 40, 46;

1 Story Eq. Jur. § 385; *Hall* v. *Timmons*, 2 Rich. Eq. 120; *Whittington* v. *Wright*, 9 Ga. 23; Herman on Estoppel, 416, and authorities there cited. How long before this doctrine will be fully adopted by courts of law, as so many equitable principles have been, the future history of our jurisprudence must determine.

The doctrine is decisive of the case at bar. Sally Robbins, now Mrs. Bobo, knew her rights, such as they were, when, at the age of nineteen, she conveyed the property to her father to enable him to borrow money on a mortgage thereof to Mrs. Ferguson, as she was fully informed he intended to do. The latter was ignorant of the minority of the former, and consequently ignorant of her title, when, some days thereafter, she loaned her money and accepted the mortgage, and equally ignorant when she received the fee-simple conveyance, for which, as the record discloses, she reluctantly gave a credit on the note in excess of the value of the property.

Under such circumstances, a court of equity will restrain Mrs. Bobo from the assertion of her legal title. This proceeds not so much from the deed executed to her father, which ordinarily would be voidable, but from the knowledge which she had that it was to be used to procure money from the complainant. She is estopped from the perpetration of a fraud.

The decree of the court below dismissing the bill will be reversed, and cause remanded. It being suggested by counsel that the pleadings below did not sufficiently advise the defendant that the complainant rested her case upon a claim of fraud upon the part of the infant, and that therefore no proof was taken by the defendant upon that point, leave will be granted to both sides to amend pleadings and take further testimony.