### HATTIE A. BRANTLEY *v.* WALTER B. WOLF.

1. INFANT. *Conveyance of land. Disaffirmance. Estoppel in pais.*
    Where one in infancy has sold and conveyed his land, he is not estopped from disaffirming the conveyance, after attaining his majority, by the facts (1) that the vendee was ignorant of his minority at the time of the purchase; (2) that he gave to the vendee no notice of his minority, and (3) that he received and enjoyed the purchase-money. It is only an active participation or silent acquiescence in some act designed at the time to work a fraud upon the vendee, which will make the conduct of the infant grantor, in such case, operate as an estoppel to a disaffirmance of his contract of conveyance. *Ferguson* v. *Bobo*, 54 Miss. 121, distinguished and explained.

2. SAME. *Permitting improvement of land sold. Estoppel.*
    The act of a minor in standing by and seeing buildings erected upon land which he has sold and conveyed, without making objection thereto, does not estop him to disaffirm the conveyance upon arriving at his majority.

3. SAME. *Disaffirmance of conveyance. Limitation.*
    Ordinarily it is not an unreasonable delay for the vendor of land sold during his infancy to wait two years after attaining his majority before disaffirming the conveyance. And the fact that the land was bought by a second vendee after the vendor had attained his majority would make no difference, where the latter was ignorant of such subsequent purchase.

4. SAME. *Disaffirmance of contract. Consideration, whether returned or not.*
    Where one having made a contract during his minority disaffirms it, upon the attainment of his majority, he must return the consideration which he received therefor, if he has it at the time of attaining majority, or of the act of disaffirmance, and if, after the attainment of his majority, he retains for an unreasonable time, or disposes of it, that will amount to a ratification of his previously voidable contract; but if he has lost or squandered such consid-

eration during his minority, he is not required to make restitution thereof, nor satisfaction therefor, in order to entitle him to disaffirm his contract.

5. SAME. *Conveyance of land. Disaffirmance. Subsequent purchaser for value.* The fact that the purchaser of land from an infant's vendee paid a valuable consideration therefor, in ignorance of the rights of the infant vendor, does not protect such subsequent purchaser against the right of the infant to disaffirm the conveyance when he has attained his majority.

APPEAL from the Chancery Court of Grenada County.

Hon. J. B. MORGAN, Chancellor.

This appeal was taken by Mrs. Hattie A. Brantley, the defendant in the court below, from a decree in favor of the complainant, upon bill, answer, and proofs. The questions presented by the pleadings, and the effect of the proof are indicated in the opinion of the court.

*W. C. McLean*, for the appellant.

1. The appellee urges that the acts of appellant at the date of sale in June, 1872, were of such a nature and character as to estop her in this suit, and rely upon the case of *Ferguson* v. *Bobo*, 54 Miss. 121; and invoke the rule there announced to wit: "that whenever an infant, who has arrived at years of discretion, by direct participation or by silence, when he is called upon to speak, has entrapped a party ignorant of his title or minority into purchasing his property, he will be estopped by a court of chancery from asserting his title." It surely cannot be very seriously contended that appellant entrapped (ensnared) Harrison into buying the property. There is nothing in the record to suggest that she defrauded, misled or deceived Harrison as to anything, and it is well known that the very life of *estoppel in pais* is fraud; it is based upon intention to deceive, the gist is deception. Big. on Estop. (2d ed.) 467–470. This is true as to persons *sui juris*, but when we come to apply it to infants and *feme coverts*, many authorities say that it will not apply to them at all, while all agree that it must be an intentional injury. 102 U. S. 302; Big. on Estop. 443–448; 52 Tenn. 400; 46 Tenn. 450; Ewell's Ld. Cas. 315, 316; *Upshaw* v. *Gibson*, 53 Miss. 343; *Miles* v.

*Leingeman*, 24 Ind. 385 ; *Kane Co.* v. *Harrington*, 50 Ill. 232 ;
*Schnell* v. *Chicago*, 38 Ill. 382 ; *Davidson* v. *Young*, 38 Ill.
146 ; *Rogers* v. *Higgins*, 48 Ill. 211 ; *Schwarts* v. *Sanders*,
46 Ill. 18 ; *McCoon* v. *Smith*, 3 Hill, 147.    It is in evidence
that appellant in June, 1872, labored under the impression
that her sale was valid and unavoidable.    How, then, can
there be an intention to injure, to defraud, when she thought
the contract irrevocable?    The case of *Upshaw* v. *Gibson*, 53
Miss. 343, is decisive of this question.    Mrs. Upshaw stood
quietly by and permitted her husband to mortgage her per-
sonal property.    The mortgagee was ignorant of her minority
and her title, and this court held that she was not estopped to
claim the property.    In principle there is no difference be-
tween the cases in which a married woman executes a deed
to realty, and when she permits her husband to dispose of
her personal estate.    There is nothing in this record to show
that Harrison was induced to purchase, or that he was misled
by any act of appellant.    Admit that appellant freely and will-
ingly executed the deed, and that she was extremely anxious
to dispose of the property, this would not be a fraud—such a
fraud as to estop her.    If so, then the whole doctrine of in-
fantile incompetency is entirely overthrown, and all contracts
and every sale by an infant of its property will be legal
and valid, except when it has been overreached in
the bargain or is induced to contract by the adult.
Does the fact that an infant is willing to sell its land or to
enter into a contract in any manner prove a fraud?    It is not
a fraud for an infant to sell its property.    That a minor is lia-
ble for pure torts is elementary law, that he is not bound on
his ordinary contracts unconnected with any tort, is equally
true.    On the one hand it is held that if the tort is an inhe-
rent part of the contract, inseparable from it, the infant is not
liable.    On the other hand if the tort is a separate independ-
ent act, or a wilful act outside of the contract, the infant is
responsible, though the opportunity to commit it may be in
consequence of some contract ; but the true rule is that when

the tort is so involved with the contract that the wrong really consists in the breach of the contract, the infant is not estopped. 2. Smith's Ld. Cas. (7th ed.), 726, 727 ; 17 Am. Law Reg. 44, 45. In the case at bar, the only wrong is the failure of appellant to satisfy and affirm her voidable contract. The appellant never misled Harrison. She did not even represent that she was an adult ; but if she had represented to Harrison that she was of lawful age to contract, this would not estop her. See *Sims* v. *Everhardt*, 102 U. S. 302 ; *Whitcomb* v. *Joselyn*, 51 Vet. 79 ; Schouler's Dom. Rel. 564, 565 ; *Prescott* v. *Morris*, 32 N. H. 101 ; *Burley* v. *Russell*, 10 N. H. 184 ; *Morrel* v. *Adm.*, 19 Vet. 505 ; *Conrad* v. *Lane*, 26 Minn. 389 ; *Conn* v. *Birdsall*, 1 Johns. Cas. 127 ; *Brown* v. *McCune*, 5 Sandf. 224 ; *Merriam* v. *Cunningham*, 11 Cush. 40 ; *Studwell* v. *Shafter*, 54 N. Y. 249.

2. The appellant's conduct since she has reached majority has not been of such a nature as to estop her from assuming her title. The proof shows that immediately after the sale in June, 1872, Hattie A. left Grenada and wènt to Hazlehurst, Mississippi, where she resided till the spring of 1876, when she went to Arkansas, then to Texas, and returned to Hazlehurst Mississippi, in March, 1879 and in June or July, 1880, notice of disaffirmance was made ; that after she reached majority and before she disaffirmed the sale she was in the State of Mississippi but one year and three months ; that Hattie A. never knew until June or July, 1880, that improvements had been made, and did not know, until after the commencement of the ejectment suit, that W. B. Wolfe had purchased the property ; under these facts, there is no necessity of citing authorities to show that no estoppel can arise. All of the books say that the improvement must be made with the knowledge of the party. Hattie A. further says in her deposition that she did not know until July, 1880, that she had the right to disaffirm (and in this she is no where contradicted) ; and it is well settled that there can be no valid ratification unless the infant knew his legal rights at the time of the ratification. 1 Am. Ld. Cas. 310 ; note

to *Toby* v. *Wood*, 25 Am. Law Rep. 30; *Baker* v. *Kennet*, 54 Mo. 82; *Pitty* v. *Roberts*, 7 Bush, 410; *Owen* v. *Long*, 112 Mass. 403; *Curtis* v. *Patton*, 11 Serg. & R. 305; *Hinley* v. *Morgarity*, 3 Pa. St. 428; *Chambers* v. *Wherry*, 1 Bailey, 28; *Norris* v. *Vance*, 3 Rich. 164; *Fitsen* v. *Wilson*, 40 Ind. 148; 38 Ill. 382; 21 Beav. 522; *Scott* v. *Buchanan*, 11 Humph. 470–474; *Smith* v. *May*, 9 Mass. 64; *Ford* v. *Phillips*, 1 Pick. 203; *Thing* v. *Libby*, 16 Me. 57; *Reed* v. *Beshears*, 4 Sneed (Tenn.), 118; 1 Pars. on Con. (6th 224, ed.) 323 (5th. ed.) 323, 324; 16 Me. 57;

3. The respondent, Hattie A., had reasonable time after the disabilities of coverture were removed in which to avoid the deed made in June, 1872, and the suit was commenced before those disabilities had been removed. The authorities are all one way upon this point. *Sims* v. *Everhardt*, 12 Otto (U. S.), 310, 311; *Scott* v. *Buchanan*, 11 Humph. 473; *Matherson* v. *Davidson*, 2 Coldw. 440–450; *Dodd* v. *Benthall*, 4 Heisk. 601. And if this were not so, the disability of coverture, instead of being a protection to the wife, as the law intends it, would be to the contrary. The person who takes a deed from an infant *feme covert* knows that she is not *sui juris*, and that she will be under the husband's control so long as the coverture lasts. He is bound to know also that she is an infant; he assumes, therefore, the risk of both of these disabilities. This must also be true in the legal or equitable form, for it is a fundamental principle of the common law to allow no diversity of interests between husband and wife, and, hence, gives the wife no power to bind herself by acts *in pais*. 1 Story's Eq. Jur., sect. 243; Ewell's Ld. Cas. 279. (Code of 1880 changes this rule.)

4. The fact that complainant is a *bona fide* purchaser for value, without notice, is no protection to him and is no answer to the suit. *Upshaw* v. *Gibson*, 53 Miss. 344; *Price* v. *Furman*, Ewell's Ld. Cas. 121; *Ib.* 127, 128; *Mustard* v. *Wolford's Heirs*, *Ib.* 158; 1 Am. Ld. Cas. 318 (citing 7 Dana, 506, 521; 5 Smed. & M. 216); 3 Washb. on Real

Prop. 226 ; *Jenkins* v. *Jenkins*, 12 Iowa, 195 ; *Miles* v. *Lingerman*, 385 ; Big. on Estop. 445.   This is true for the reason that when the infant avoids the deed, it (the deed) becomes void *ab initio*.   Ewell's Ld. Cas. 150.

· 5. Since respondent never received the consideration, or if she did receive it and she wasted, squandered or misapplied, or expended it for any purpose whatsoever before reaching majority, she is not compelled to restore, or offer to restore, before avoiding the contract, and a court of chancery will not impose any terms upon her doing so.   Such is the great weight of American authority.   The annotators of American Leading Cases affirm this to be the true rule, and so also does Mr. Ewell in his work containing the leading cases.   See 1 Am. Ld. Cas. 319, (5 ed.) side p. 259 ; Ewell's Ld. Cas. 126. There are *dicta* to the contrary effect ; but, upon examination, it will be seen that they are upon a state of facts altogether different from the facts in this case.   Complainant admits that in the case of executory contracts it is not necessary to restore the consideration, but contends that in executed contracts the consideration must be returned.   Some of the authorities do draw this distinction between executed and executory contracts ; but there seems to be no reason for the distinction.   *Dana* v. *Stoms*, 3 Cush.  372–376 ; *Mustard* v. *Wolford's Heirs*, 15 Gratt. 329 (reported in Ewell's Ld. Cas. 152) ; *Gillespie* v. *Baily*, 12 W. Va. 70 (29 Am. Law Rep. 450) ; *Bedinger* v. *Whorton*, 27 Gratt. 857.

*Fitz-Gerald & Whitfield*, for the appellee.

Appellee bases his right to hold the property on three grounds : (1) That Mrs. Brantley, although an infant at the time she made the conveyance to Mrs. Harrison, is by her conduct, estopped from recovering the property.; ( 2 ) that she failed, before instituting her suit for the recovery of the property, to return or offer to return the amount of money she received for the property and put her vendee in *statu quo*, and ( 3 ) that he is a *bona fide* purchaser without notice.

We contend, that notwithstanding the minority of appellant

at the time she sold the property to Mrs. Harrison, her conduct at the time and since estops and precludes her from recovering it. Her conduct estops her from saying she was a minor. This case is scarcely distinguishable from the case of *Ferguson* v. *Bobo*, 54 Miss. 121. The court in that case went back to the earliest cases on the subject and with impartiality reviewed and analyzed every reported case of any consequence since. We shall, therefore, be satisfied to show, as we have not a doubt we shall, that the principles decided in *Ferguson* v. *Bobo* are involved in and are completely decisive of this case. Let us draw a parallel between the cases and see if our case is not, in fact, stronger than that. The minor in *Ferguson* v. *Bobo* who, for convenience we will call Sally, was nineteen years and three months old when she made the conveyance to her father. The minor in this case, who for convenience we will call Hattie, was aged seventeen years and ——— months when she and her husband made the conveyance of the lot in suit to Mrs. Harrison, the vendor of Wolfe, the appellee. When Sally's father made the conveyance of the fee-simple title to Mrs. Ferguson, Sally was about twenty-one years of age. When Hattie's vendee, Mrs. Harrison, made the conveyance of the lot to Wolfe, the appellee, Hattie, was about twenty-two years of age. Sallie knew her rights, such as they were, say the court, when, at the age of nineteen, she conveyed the property to her father, Hattie knew her rights when she and her husband conveyed the lot to Mrs. Harrison. Mrs. Ferguson was ignorant of the minority of Sally when she made the conveyance to her father, and was still ignorant of her minority at the time she conveyed to her father, when the father made absolute deed to her, Mrs. Ferguson ; that is to say, Mrs. Ferguson's ignorance of the minority of Sally when she conveyed the property to her father, continued until after Sally's father made an absolute deed to her. Mr. Harrison, who made the purchase of the lot for his wife, was, at the time of the purchase from her, ignorant of Hattie's minority, and the appellee, when he purchased from Mrs. Harrison, was ignorant

of the minority of Hattie when she and her husband sold to
Mrs. Harrison, and appellee purchased from Mrs. Harrison,
about two years after Hattie, in fact, had reached her majority.
Pending the transactions between Sally's father and Mrs.
Ferguson, Sally was passive as to the transactions — she did
not seek to sell the land or aid her father therein, nor did she
seek to borrow money for herself or for her father.   Hattie's
conduct in the negotiations with Mr. Harrison for the sale of
the lot was very active and pronounced — she frequently sent
persons to Mr. Harrison requesting him to come to her and
buy the lot.    Nothing is said, in the opinion of the court in
*Ferguson* v. *Bobo*, of the personal appearance of Sally indi-
cating her age to be twenty-one, or of the maturity of her
intellectual faculties at the time she conveyed to her father.
The evidence in our case is very clear and conclusive that the
personal appearance of Hattie, at the time she and her husband
sold the lot to Mr. Harrison, would lead any one to suppose
she was twenty-one, and that she was actually smart enough to
be ten years older.    Mrs. Ferguson took possession of the
property she bought and resided upon it immediately after
she made the purchase.    Mrs. Harrison took possession of
the lot and commenced improving it immediately after she
purchased it.    Sally, a few months after Mrs. Ferguson went
into possession brought ejectment.    It was about six years
after the sale of the lot, two years after she reached her
majority, and about a year after the purchase by appellee,
before Hattie brought suit for the lot.    There is the parallel.
Who has the advantage?    If the facts in *Ferguson* v. *Bobo*
warranted the court in delivering the opinion in that case,
which was remanded upon suggestion of counsel for Mrs.
Bobo that the pleadings did not sufficiently advise her that
Mrs. Ferguson rested her case upon a claim of fraud upon the
part of the infant, surely under the pleadings and proof in this
case, the decree in the court below will be affirmed.

The appellant says she did not get the money.    The testi-
mony of Mr. Harrison and Mrs. Gomillion conclusively

shows, it cannot be doubted, that every dollar was paid into appellant's hands, her husband being sick in bed at the time; and, notwithstanding appellant was pressed for money, the full value of the lot was paid. But, if we are wrong in our position, that the conduct of Mrs. Brantley estops her altogether from a recovery of the property, we insist that before she brought her suit of ejectment, enjoined by this action, she was bound in law to offer to return the amount she received for the property, and, in case she failed to do that, as she did, then, when the bill in this case was filed, she should have offered to return it or otherwise to place her vendee in *statu quo*. This court say, in *Ferguson* v. *Bobo* (opinion) p. 133: " The authorities seem to be uniform, that an infant, suing for the recovery of property, real or personal, sold by him, must account for the price received." Ewell, in his Leading Cases, says, in note 3 to *Price* v. *Furman*, 124: " The policy of the law seems to be to require the infant, upon such disaffirmance, to place the adult in *statu quo*, so far as consistent with the preservation of his privilege, which is designated as a shield and not as a sword; but the protection of the infant is the main object, and the other seems to be secondary in importance, and must yield when its exercise is inconsistent with the former. Accordingly, when the infant elects to disaffirm his voidable contracts, he must disaffirm *in toto* as well that portion which is to his advantage as that which is onerous to him." See, also, Am. Ld. Cas. 318, *et seq*. We maintain that it was the duty of Mrs. Brantley, before she arrived at age, and certainly and beyond question, after she had reached her majority, to speak out as to her rights. Mrs. Brantley virtually stood by and saw Wolfe purchase the property, pay out the money, and afterwards put up valuable improvements on the place, without a word of admonition. She was not in Grenada all the time; but she was here when the first residence was being built, and she was bound to know that the promptness with which work was commenced

after the sale, that her vendee's purpose was to make the property available.

The court below, in deciding the case, did not take occasion to pass on the peculiar attitude of appellee as a *bona fide* purchaser without notice. The court below only passed upon the case upon the assumption that Wolfe occupied the shoes of Mrs. Harrison. That, of course, was enough. We think, however, that, should the appellant not be estopped by her conduct as to her vendee, or even had her vendee known of her infancy at the time of the conveyance, that Wolfe being a *bona fide* purchaser, without notice of the minority of appellant, he can hold the property, notwithstanding the fact that the lot could be recovered from Mrs. Harrison, were she the owner of it now. The rule that a subsequent *bona fide* purchaser without notice is protected, is without exception.

The deed of an infant is only voidable. When an infant makes a deed the title passes from him, and unless he disaffirms his deed within the proper time it remains away from him forever. While the title is so out of him, with his deed on the record, if a person with no knowledge of his minority purchases the land so conveyed by the recorded deed, we cannot see why he should not be protected, even though he purchases while the infant is still an infant. "A purchase without notice from a purchaser with notice will confer a valid title, because the vendee is not answerable for a fraud of which he is ignorant."— 2 Wh. & Tud. Ld. Cas. Eq. 1, 34, referring to *Tompkins* v. *Powell*, 6 Leigh, 176; *Glidden* v. *Hunt*, 24 Pick. 221; *Varick* v. *Boggs*, 6 Paige, 323.

CHALMERS, J., delivered the opinion of the court.

On the 6th of June, 1872, Mrs. Hattie A. Brantley, then in the seventeenth year of her age, in conjunction with her husband, sold to one Harrison, a lot in the town of Grenada, for the sum of $300 cash in hand paid. Harrison, having first built upon it, sold the lot to complainant Wolf, against whom Mrs. Brantley, having now come of age, has brought ejectment

to recover the property upon the ground that her conveyance, having been executed during infancy, is voidable at her election. This bill has been filed by Wolf, to enjoin the prosecution of the suit in ejectment upon several minor grounds, which will be noticed in turn ; but principally upon the theory that a court of. equity will always enjoin one who seeks to recover back property which he has sold during minority for full value to a purchaser in good faith who was ignorant of his minority ; and in support of this view of the law the authority of the case of *Ferguson* v. *Bobo*, 53 Miss. 121, is relied on. This is an entire misconception of the case referred to. We had occasion in that case to discuss somewhat at length the liability of infants for their frauds, torts, and deceits, both in courts of law and of equity, and we undertook, if not to prescribe with accuracy the exact limits of the doctrine, at least to give a general outline of the result of the decisions on this much controverted subject. But we were dealing solely with cases of actual fraud and deceit, of frauds committed, and intended to be committed, in and by virtue of some act or omission by which another acquired a legal right. In one sense, it is always a wrong and an injury for a person laboring under a disability to enter into a contract and enjoy its fruits, and thereafter to repudiate it to the prejudice of the other party ; but legal fraud cannot be predicated of such conduct by a minor where it has been unmarked with any element of deceit or intentional wrong, because the right of disaffirmance is the privilege which the law attaches to the condition of disability, and of this right all men are bound to take notice. The doctrines announced in *Ferguson* v. *Bobo*, 54 Miss. 121, have reference, not to the injustice wrought in the exercise of the legal right of disaffirmance by a minor, but to some active participation or silent acquiescence in an act designed and 'intended at the time to operate a fraud upon another, or in brief to the question of the applicability of the wholesome doctrine of estoppel by conduct to the acts and contracts of infants. Many courts deny that the doctrine of estoppel *in pais* can ever be applied

to infants, and others, while not questioning its applicability in some aspects, are careful not to apply it where the acts or omissions, from which it is sought to deduce it, are connected with contracts. Not finding it necessary to take position on this question, as applicable to courts of law, we did not hesitate to align ourselves with those courts which hold that where an infant, who can be regarded as having come to such years of discretion as fairly to know the force and effects of his own conduct, has entered into any scheme for himself, or silently and knowingly acquiesced in one devised by another for the purpose of defrauding a third person, a court of equity will always interfere by injunction, or other appropriate method, for the purpose of preventing the consummation of the scheme, even though the matter rested wholly in contract, and the only fraud of which the infant was guilty was in the suppression of the fact of his minority. Of the correctness of this doctrine we remain satisfied, and it seems to be regarded by Mr. Bigelow as the sounder doctrine. Big. on Estop. 492. The key-note of our decision is found in the quotation made from Lord Cowper that " if an infant is old enough and cunning enough to contrive and carry out a fraud, he ought to make satisfaction for it." 54 Miss. 132.

Thus, in the case then before us, deeming from the record that Miss Robbins (Mrs. Bobo), while a minor, intentionally and knowingly conveyed her property to her father for the purpose of enabling him to borrow money and thereby of defrauding the lender by a subsequent assertion of her own right of disaffirmance, we declared that a court of equity would intervene in any manner necessary to prevent the carrying out of such a scheme. But when it was suggested by counsel, that though the record seemed to wear this aspect, no such view of the case had been presented in the court below and no proof had been taken with regard to it on either side, and, that in point of fact, it was not true, we remanded the case, with leave to take proof on this subject.

There is not only no suggestion in the record now before us of any intention on the part of Mrs. Brantley to deceive or defraud her vendee when she sold her property to him, but it is shown that at that time and up to a short time before the bringing of the action of ejectment, she, and possibly he also, believed that by reason of her marriage her deed was binding on her, though she was still a minor. He testifies, however, that he did not know of her minority, and if he had he would not have bought, though he asked no questions, and she made no affirmations on the subject. To say that equity under these circumstances, and with no further element of estoppel appearing, can prevent her from reclaiming her property, would be to assert that a court of chancery can overturn the law.

But it is said that she stood by and permitted her vendee to build upon the lot, and subsequently suffered the present owner to acquire title without giving notice of her claims. The proof does not bear out these charges. She left the town in a few days or weeks after the sale, has never returned to it, and most of her subsequent life has been spent in other States.

She knew nothing of the erections made upon the lot, unless she saw the commencement of those built immediately after the sale, and this would no more estop her than the sale itself.

The question of her obligation to account for the value of the improvements, in the event of a recovery, is not before us.

It is insisted that she delayed too long the assertion of her rights, and is estopped by her silence. The suit was brought in about two years after she attained majority, and certainly, in the absence of some exceptional circumstances, her action was sufficienty prompt, since no new element of estoppel intervened ; for although the present owner bought during the interval, she was ignorant of his purchase. It is generally held in other States, that no time will suffice to bar the right of disaffirmance short of that which would toll the right of

entry under the Statute of Limitations ; but in *Thompson* v. *Strickland*, 52 Miss. 574, this court preferred to say only that the delay must not be unreasonable, leaving each case to stand on its own facts.    It is also quite generally held elsewhere that in the case of a minor, who is also a married woman, the right of disaffirmance will exist as long as she remains covert ; but this rule would certainly be inapplicable here, since by the adoption of the Code of 1880, all the disabilities of coverture have been swept away.

Mrs. Brantley made no offer to return the money received by her for the lot, and this is urged as affording ground for enjoining her action of ejectment.

It was said in *Furguson* v. *Bobo, supra,* that a return of the consideration received was always necessary in this class of cases.    The point was not before us in that case, and the remark was borrowed from 2 Kent's Com. 240.    The doctrine there announced is supported by a formidable array of authorities, and was probably the doctrine formerly universally recognized ; but a careful and extended examination of the cases satisfies us, that while it is still the accepted rule in many courts, it requires to be modified.

If the minor has in possession any of the consideration received, when he disaffirms his contract, or after he becomes of age, he must return it.    By the act of disaffirmance he loses the right to retain that which has been received, and if he holds on to the consideration, or disposes of it after majority, it will amount to a ratification of his previously voidable contract. But if he has lost or squandered the consideration during minority, this is nothing more than the law expects of him, and he cannot be required to purchase the right of reclaiming his own by still further abstractions from his estate.    Such a rule would practically strike down the shield which the law, by reason of his inexperience and youth, throws around him. Neither as to executed nor executory contracts is he required to return the consideration where it passed from him during minority.    We say nothing of a case where it could be shown

60 MISS. — 28.

that the consideration had been purposely gotten rid of in order to bring suit for reclamation of property previously conveyed. The existence of any such thing is negatived here. Ewell's Ld. Cas. on Inf. 126, note; *Price* v. *Furman,* 27 Vt. 268; *Chandler* v. *Simmons,* 97 Mass. 514; *Manning* v. *Johnson,* 26 Ala. 452; *Jenkins* v. *Jenkins,* 12 Iowa, 195; *Carpenter* v. *Carpenter,* 45 Ind. 142; *Green* v. *Green,* 69 N. Y. 553; *Miles* v. *Singerman,* 24 Ind. 385; *Dill* v. *Bowen,* 54 Ind. 205; *Fitts* v. *Hull,* 9 N. H. 445.

Many cases to the contrary may be found, where the contract has been executed; but the doctrine announced by those cited above seems to us most in accordance with the principles underlying the disabilities of infants.

That the complainant was a purchaser for value, without notice of defendant's rights, is immaterial. The right of the infant to avoid his contracts is an absolute and paramount right, superior to all equities of other persons, and may, therefore, be exercised against *bona fide* purchasers from the grantee, and his avoidance may be evidenced by any act clearly demonstrating a renunciation of the contract. *Price* v. *Furman,* 27 Vt. 268; *Hill* v. *Anderson,* 5 Smed. & M. 216; *Jenkins* v. *Jenkins,* 12 Iowa, 195; 1 Am. Ld. Cas. 259.

Reversed and bill dismissed.