ALVIN LAKE v. JOHN C. PERRY.

[49 Souh. 569.]

1. INFANTS. *Removal of disabilities. Chancery courts. Jurisdiction. Code 1892, §§ 493, 494. Void judgments. Collateral attack. Receiving benefits. Good faith.*

The jurisdiction conferred on the chancery court by Code 1892, §§ 493, 494 (Code 1906, §§ 543, 544), authorizing the removal of the disabilities of infants, is special and statutory; and

(a) The father of the infant, if alive and within the jurisdiction of the court, is a necessary party to a valid proceeding and decree removing the infant's disabilities; and

(b) A party claiming under such a decree must show, without the aid of presumption, that the court had jurisdiction, otherwise the proceeding and decree is void and subject to collateral attack; and

(c) The rule that one receiving the benefits of a void judgment cannot thereafter assail it, cannot be invoked to save an invalid or voidable deed executed by the infant whose disabilities were sought to be removed by such a proceeding, where the grantee had knowledge of the facts, although he acted in good faith.

2. SAME. *Disaffirmance of deed. Estoppel. Fraud. Statute of limitations. Laches.*

The contracts of an infant may be disaffirmed by him, without returning the consideration received and squandered by him and without putting the other party to the contract in *statu quo*, at any time before the bar of the statute of limitations has fully run against the right, and the doctrine of laches, in the absence of facts creating an estoppel, has no application; but

(a) He cannot do so, if at the time of the contract he had reached a stage of maturity calculated to deceive a person of ordinary prudence, and deceived the party contracted with as to his age, asserting that he was adult, and received the benefit of the contract; and

(b) He is estopped by his conduct to disaffirm the contract, where the proof convincingly shows that he was guilty of wilful fraud and misrepresentation, deceiving and misleading the other party, to his danger.

FROM the chancery court of Grenada county.

HON. ISAAC T. BLOUNT, Chancellor.

Lake, appellant, was complainant in the court below; Perry, appellee, was defendant there. From a final decree in defendant's favor the complainant appealed to the supreme court. The opinion of the court fully states the facts.

*Cowles Horton,* for appellant.

The proceedings of June, 1899, in *Ex parte Alvin Lake,* No. 1137, upon which appellee relies in this case, are absolutely void and should have been excluded. In the first place, the chancellor in vacation had no authority to entertain these proceedings, and the decree signed by him is worthless for all purposes. The record in this proceeding discloses the fact that the minor's application sought the removal of his disabilities "at the next session" of the chancery court, but, nevertheless, the chancellor in vacation, on the same day the application was filed, undertook to grant this decree. Code 1892, § 493, under which these proceedings must have been had, confers the power solely upon the chancery court, and being in derogation of the common law and conferring special and limited powers upon the court, it is to be strictly construed and against the exercise of a doubtful power. By no sort of construction can it be said that this section confers any power upon the chancellor (Black, Judg. sec. 179; 23 Cyc. 675; *Adams v. Wright,* 30 South. 575; *Wilson v. Rodewald,* 61 Miss. 232), and his action was entirely unwarranted and his decree invalid.

In the case of *Marks v. McElroy,* 67 Miss. 545, 7 South. 408, a case, which, in our judgment, controls this case throughout, this court said: "The power conferred by our code upon the chancery court to remove the disabilities of minors is not judicial in its character; it may be exercised by the legislature without the intervention of other authority, or committed to any officer or commission having no judicial authority. The relief sought is private in its character, affecting no right of others; the privilege and the method of availing of it are created and defined by the statute, and the proceedings are valid only when

in conformity to its regulations. Under such circumstances the court but exercises a statutory power and it is incumbent upon one relying upon the decree to show that the court had acquired jurisdiction under the law; no presumption of jurisdiction arises from the mere fact of its omission." See also *Hindman v. O'Connor*, 13 L. R. A. 490. These cases are supported by an unbroken line of authorities, among which are the following: Black, Judg. secs. 279, 280; Freem. Judg. sec. 123; *Ballard v. Davis*, 31 Miss. 525; *Currie v. Stewart*, 27 Miss. 52; *Hamilton v. Lockhart*, 41 Miss. 460; *Temple v. Hammock*, 52 Miss. 360; *Fitzpatrick v. Beal*, 62 Miss. 244; *Stampley v. King*, 51 Miss. 728; *County v. Buckley*, 85 Miss. 713, 38 South. 104; *Hawkins v. Carroll Co.*, 50 Miss. 735; *Lester v. Miller*, 76 Miss. 309, 24 South. 193; *Harris v. State*, 72 Miss. 960, 18 South. 387; *White v. Railroad Co.*, 64 Miss. 566, 1 South. 730; *Craft v. DeSoto Co.*, 79 Miss. 616, 31 South. 204; *Rogers v. Hohn*, 63 Miss. 578; *Bank v. Johnson*, 7 Smed. & M. 449; *Vick v. Mayor*, 1 How. 379; *Harey v. Tyler*, 69 U. S. 2; *Thatcher v. Powell*, 6 Wheat. 127; *Galpin v. Page*, 85 U. S. 350.

The record discloses also that no notice of the application was ever given to the minor's father (his only living parent) although he was within the jurisdiction of the court. The statute (Code 1892, §§ 439 *et seq.*) is madatory in its requirement that the parents shall either join in the application in the first instance, or be made parties defendant as in other cases. The failure, then, to observe this plain requirement renders the proceedings a nullity, without regard for the other reasons urged against them. *Howry v. Galloway*, 48 Miss. 587; *Temple v. Hammock*, 52 Miss. 360; *Koch v. Bridges*, 45 Miss. 258; *Woodruff v. Okolona*, 57 Miss. 810; *Gibson v. Currier*, 83 Miss. 254, 35 South. 315.

Having shown that these proceedings of 1899 are absolutely void, we shall endeavor to show that the learned court below erred in dismissing appellant's bill and finding for appellee.

Both the court and counsel concede the well settled proposition that an infant vendor may recover his property sold during infancy. *Hill v. Anderson,* 5 Smed. & M. 216; *Wallace v. Latham,* 52 Miss. 291; *Allen v. Poole.* 54 Miss. 323; *Brantley v. Wolfe Co.,* 60 Miss. 432; *French v. McAndrew,* 61 Miss. 187; *Harvey v. Briggs,* 68 Miss. 66, 8 South. 274; *Shipp v. McKee,* 80 Miss. 746, 31 South. 197, 32 South. 281.

In speaking of the effect of a void judgment, Judge Freeman observes: "A void judgment is in legal effect no judgment at all. By it no rights are divested. From it, no rights can be obtained. Being worthless in itself, all proceedings under it are equally worthless. It neither binds nor bars any one. All acts performed under it and all claims flowing out of it are equally worthless." Freem. Judg. (3d ed.) sec. 117; Freem. Ex. sec. 20. As said in *Lester v. Miller,* 76 Miss. 309, 24 South. 193, "A void judgment or order may be disregarded collaterally and the lapse of time will not help its invalidity." See also *Mastin v. Gray,* 27 Am. Rep. 149; *McComb v. Ellet,* 7 Smed. & M. 505; *Kramer v. Holster,* 55 Miss. 243; *Harris v. State,* 72 Miss. 960, 18 South. 387; 12 Enc. Pl. & Pr. 201, 202, 204, 213. It should, then, have been excluded and should have had no influence in this case.

Learned counsel for the appellee announce a very familiar and elementary rule of law, that these innocent purchasers for value without notice would be protected as against any collateral attack on this decree for the sale of the lands if such decree was merely voidable or irregular; but the other principle is equally well settled, to-wit: that where a decree is absolutely null and void, it is subject to attack anywhere, collaterally or otherwise.

Appellee does not contend that he was misled or deceived by a single act or statement of appellant, in fact, every statement by appellant was and is true. Appellee testifies that he knew he was dealing with a minor, and for this reason retained his money. He sought to clinch the deal by these proceedings,

and now, when it becomes apparent that they are void, appellee seeks to estop appellant, not upon any deception or fraud, but upon the fact that these proceedings were had.

In fact the only thing which may estop an infant in any case is actual, active and wilful fraud and misrepresentation. *Demourelle v. Piazza,* 77 Miss. 433, 27 South. 623.

The dead doctrine of laches, which does not apply in this state. The minor had the full ten years within which to file this bill after reaching his majority, and no lapse of time may be used against him. This has been repeatedly decided in this court. *Brantley v. Wolfe, Allen v. Poole, Wallace v. Latham, Shipp v. McKee, supra; Cox v. Mortgage Co.,* 88 Miss. 97, 40 South. 739.

Appellant does not offer to refund the consideration. The law does not require him to do so. In the early case of *Hill v. Anderson,* 5 Smed. & M. 216, it was said "An infant vendor may recover back his property, real or personal, but in such cases he must refund what he has received." Judge CHALMERS seemingly took the same view in *Ferguson v. Bobo,* 54 Miss. 121, but the court will note that in neither of these cases was the point necessary to a decision of the case. When the question became material, this same judge, who rendered the opinion in *Ferguson v. Bobo,* laid down this rule as being the correct one on the question: "If the minor has in possession any of the consideration when he disaffirms or after he became of age, he must return it . . . But if he has lost, or squandered the consideration during minority, this is nothing more than the law expects of him, and he cannot be required to purchase the right of reclaiming his own by still further abstractions from his estate." *Brantley v. Wolfe, supra.*

In *Hafvey v. Briggs, supra,* it is said: "That the minor must refund if he elects to disaffirm is true, provided he has in his possession the consideration received by him when he elects to disaffirm." We find it stated in Cyc. (vol. 22, p. 557) that "if during infancy he has disposed of the property received,

or spent or wasted the consideration, he is not obliged to make restitution upon his avoidance." On page 614, same volume, it is said: "The true rule, is this: where the infant upon his arrival at majority, or at the time he seeks to disaffirm still has the consideration received or any part thereof, he must upon his disaffirmance, return it." The supreme court of Nebraska takes the view and, in a masterly opinion, holds that the minor is never to be required to disaffirm unless he has the specific consideration received by him in his possession at the time of disaffirmance. *Englehardt v. Pritchett,* 26 L. R. A. 177, and authorities cited. See also, the supreme court of Iowa in the case of *Leacox v. Griffith,* 76 Iowa, 89. In the case of *Macgreal v. Taylor,* 167 U. S. 668 (42 L. Ed. 325), the United States supreme court uses this language: "It is well settled that it is not a condition of the disaffirmance by an infant of a contract made during infancy that he shall return the consideration received by him, if, prior to such disaffirmance and during infancy the specific thing received by him has been disposed of, wasted, or consumed and cannot be returned." "But if the consideration has passed from his hands, either wasted or expended during minority, he is not thereby to be deprived of his right or capacity to avoid his deed, any more than he is to avoid his executory contracts. . . . It is not necessary that the other party be placed in *statu quo.*" Note also this language from the same opinion: "If the minor, when avoiding his contract have in his hands any of the fruits specifically, the act of avoiding the contract by which he acquired the property will divest him of all right to reclaim same and the other party may reclaim it." In *Allen v. Lardner,* 78 Hun, 603, it was held that where the consideration consisted in repairs to his real estate so that he could not restore it without injury to his property, the minor need not refund it. See also 2 L. R. A. 741; 10 Id. 62; 12 Id. 136; *Bullock v. Sprowls,* 93 Tex. 188, 77 Am. St. Rep. 849, voluminous note in 27 L. R. A. 185. These cases, in our judgment, show that the learned court below took the

wrong view of the minor's not offering to refund. The proof shows that immediately upon receiving this money, appellant went to St. Louis, and soon had expended it all. When he arrived at his majority, he had no part of the consideration, and falls squarely within the rule, exempting a minor from refunding where he loses, spends or wastes the consideration during minority. Any other rule would, in the words of Judge CHALMERS, already quoted, "practically strike down the shield, which the law, by reason of his youth and inexperience, throws around him." The learned court, however, says, that appellant "deliberately went out to have a good time and spent it in riotous living." We answer, again quoting Judge CHALMERS: "this is nothing more than the law expects of him," and he did nothing except what the law, in its wisdom, anticipated for him. The very fact that he did thus recklessly waste his money is a fit and significant tribute to the wisdom of the law, as announced by these cases, for it shows conclusively that this appellant was not capacitated to take care of his own.

*Mayes & Longstreet* and *S. A. Morrison,* for appellee.

The case of *Marks v. McElroy* held: That in exercising the special statutory powers conferred in derogation of the common law, and proceeding under the statute, a court, though of record, is to be considered as of limited jurisdiction, and is not to be presumed to have jurisdiction other than is shown to exist. Hence, on the trial of a suit where infancy was pleaded, and where a bare decree of court removing infant's liabilities was offered as evidence without record to show that jurisdiction had been acquired by the court, the decree was executed. Counsel for appellant, relying upon this case, has sought not merely to exclude the chancellor's decree, but also the record showing that jurisdiction had been properly acquired.

The court not only does not hold that the record showing jurisdiction could not have been offered as evidence, but decides the case upon the very point that the bare decree alone

was insufficient and the record showing that jurisdiction had been acquired, should have been offered.

In the case at bar the record shows the facts by virtue of which the chancellor acquired jurisdiction to try the cause and render the decree.

On the authority of *Marks v. McElroy,* counsel for appellant has undertaken to collaterally impeach the decree of June, 1899, in an action brought to set aside the deed of Alvin Lake.

If the court finds that this cannot be done, this action falls to the ground. It is an established principle that the judgment of an inferior court upon matters upon which it has acquired the right to pass judgment, is as conclusive as the judgment of a court of general jurisdiction. Once it appears it had jurisdiction to proceed, and did proceed, the same presumptions prevail in favor of the action of the inferior court as of the superior court, and the validity of its records and the presumptions which support it, are alike indisputable in any collateral attack. 23 Cyc. Law & Proc. 1082, 1092.

Where a court has jurisdiction of the parties and the subject matter, its judgment, although irregular in form, or erroneous, or mistaken in law, is conclusive as long as it remains unreversed and in force, and cannot be impeached collaterally.

We do not understand that there is anything in the provisions of the statute upon this subject which makes it mandatory under all circumstances for the father of the petitioner to be made party to the cause. It cannot be claimed that this is necessary where the petitioner and his next friend did not know the residence of the father.

Now, while the petition did not specifically allege that the residence of George Lake, the father, is unknown to petitioner, it does allege that he lived in a distant county of the state; and it is a fair inference that this does imply ignorance of his residence and whereabouts.

The petition also alleges that the father, George Lake, has long since relinquished all claims to his service and control, and

that he had not for several years lived with his said father; and that petitioner had for years been making contracts and working and maintaining himself; and that the use and possession of the money was necessary for his proper support and maintenance.

In other words, his father had no claim upon him, having abandoned him, had in fact emancipated him, and had no right to the services and control of his son. Had it been possible to secure service on the father, and make him a party to the cause, his part in the proceedings would have been purely vicarious. A substantial compliance with the terms of the statute is all that can be required, and this has been accomplished.

The petitioner gave the reasons why the father was not made a party, and it is presumed that the chancellor satisfied himself upon this point, as well as of the general merits of the cause.

Even if the decree in question was entirely void, Lake, who accepted the benefits under it could not in a subsequent action repudiate it.

"There are some cases holding that a void judgment cannot be made valid by ratification, waiver or estoppel. But the generally accepted doctrine is that the party who would have a right to avoid the judgment may give it validity by his acceptance, and ratification of it, or by estoppel by his conduct to impeach this validity, and this he does by accepting or sharing in the fruits or benefits of the judgment," etc. 23 Cyc. L. & P. 698.

In the case of *Denver City Irrigation, etc., Co. v. Middough,* 12 Colo. 434, 13 Am. St. Rep. 224, the courts hold that one who accepts and retains the fruits of a void judgment, is estopped from assailing it or denying its validity as against him. This is true, though the court had no jurisdiction over the subject matter.

In *Woodstock Iron Co. v. Fullenwider,* 87 Ala. 584, it is held that where land of a decedent is sold by the probate court for the payment of debts or for distribution, and the purchase

money is applied by the administrator to the payment of the decedent's debts or is distributed to the heirs, although the sale may have been so far void as to convey no title at law, the purchaser nevertheless acquires an equitable title to the lands which will be recognized in a court of equity, and he may compel the heirs to elect a ratification or rescission of the contract of purchase. They are estopped to deny the validity of the sale and at the same time enjoy the benefits derived from the appropriation of the purchase money, and this principle applies to minors as well as to adults. See also *Bland v. Barnes,* 53 Ala. 152; *Robertson v. Bradford,* 73 Ala. 116; *Gainey v. Sykes,* 76 Ala. 421; *Robertson v. Smith,* 15 L. R. A. 273; *Arthur v. Israel,* 22 Am. St. Rep. 381; *Mohler v. Shank,* 34 L. R. A. 161; *Wormer v. Metropolitan St. R'y Co.,* 76 N. W. 1036.

Coming down to our own courts, the case of *Johns v. Harper,* 61 Miss. 142, is plainly applicable to the case at bar.

This case is cited with approval in the case of *Gunsdofer v. Gundy,* 72 Miss. 313, 16 South. 432, where it was held that in the absence of fraud or collusion, infants who are co-complainants with adults in a suit cannot maintain an original bill nor a bill of review to vacate a decree in their favor therein, taken by the consent of all parties although the decree is erroneous, and in consenting they mistook their legal rights. In these two cases the court binds itself plainly and unequivocally to the proposition that there is no distinction made between minors and adults in the matter of awarding decrees which were sought.

Another point raised is as to the application of the doctrine of estoppel against infants at all. Just here let us note in passing the evolution of the law in regard to the subject of infants. The old common law proceeded upon the sentimental theory that all minors were wrapped in mental and moral swaddling clothes until the age of twenty-one, and that owing to their innocence, guilelessness and inexperience, little or no legal responsibility or accountability should attach to their actions.

In thus protecting them against the consequences of their own presumed ignorance and credulity they were often permitted to practice gross and unconscionable frauds and wrongs upon others. The severity of this ancient doctrine has been greatly modified and softened of late years, and the Mississippi courts, while preserving due reverence and regard to the precedents of the old common law, have always been pioneers in disregarding and rejecting arbitrary principles when clearly inequitable, or when the reason and purpose for their existence no longer continues. This has been especially marked in respect to the laws relating to women and minors; and our courts, while now maintaining a jealous and watchful eye over the rights and interests of minors, even to the extent of overwhelmingly favoring them, are setting up as far as consistent with general policy, more equitable standards. In support of this, we cite again *Johns v. Harper,* 61 Miss. 42 and *Gusdorfer v. Gundy,* 72 Miss. 312, 16 South. 432; and also *Commander v. Brazil,* 88 Miss. 688, 41 South. 497.

Appellant, a mature man in experience and knowledge of the world, not a callow, unsophisticated country lout, but a man of nearly twenty years, who had spent several years in the city of Memphis, working in a railroad office, the best and most exacting training school of business, came to Grenada to secure his money. He represented himself, in his petition to the chancellor, as being twenty years of age, as being a resident of Grenada county, as being practically deserted by his father, and as being dependent upon the money which he sought, to support and maintain himself.

Upon the strength of these representations, having attained his purpose, he now seeks to set up the falsity of these statements, and to recover the money which he admits that he received, and used in debauchery. He willingly and eagerly fixes upon himself the seal of dishonor in order to rob appellee of a few hundred dollars. If the attitude of appellant when applying for a decree and his present attitude are consistent

and harmonious, we confess our inability to discover by what principle they are to be reconciled.

Equitable estoppel rests upon the fundamental principles of right and fair dealing. Its creed is justice between man and man. *Westboro v. Guderian*, 22 S. W. 59.

"The primary ground of doctrine is that it would be a fraud in a party to assert what his previous conduct has denied when on the faith of that denial others have acted." *Electric Light Co. v. Bristol Gas Co.*, 43 S. W. 19.

For seven years appellant waited without murmur, allowing Perry to use the lands, incur alleged liabilities, pay taxes, and in common experience to develop and improve the land. He now seeks to repudiate his action performed when he had as much intelligence as now, flaunts his indifference to integrity in the face of the court in his testimony—seeks a decree which in effect would impose these heavy accumulated liabilities on Perry and by attempting to deny him the privilege of a purchaser without notice, seeks to deny to Perry any and all reimbursements on every account and demands rents and profits and interest and land.

We submit the case with full belief and expectation that this court will not affirmatively uphold appellant in his attempt to profit at the expense of an innocent party, through his own double dealing, bad faith and insincerity.

WHITFIELD, C. J., delivered the opinion of the court.

In 1898 George Golliday, a resident of Grenada county, died intestate, seized and possessed of the property in controversy, and leaving as his heirs certain brothers and sisters, one of whom was the appellant, Alvin Lake, a minor. Certain transactions took place, as a result of which this property was sold to the appellee for $1,650. This sale was effected without any administration; Samuel Golliday, a brother of the deceased, and these heirs, effecting the sale. The deed was signed by appellant in Memphis, where he had been living. The appel-

95 Miss.—36

lant was at this time a minor, being nineteen years of age, and testifies that he signed the deed simply because the others did, and he supposed he had to. The appellee did not pay appellant any part of this $1,650, of which, had the sale been valid, he was entitled to one-eighth, placing his refusal to pay him upon the ground that the appellant was a minor.

The appellee was the chancery clerk of the county. The mother of appellant had died, leaving certain other property, in which appellant had an interest, and this property was sold through the chancery court of Grenada county, and part of the proceeds of the sale, amounting to something over $400, paid over to appellee, the chancery clerk as aforesaid, for the minor. So that in June, 1899, appellee, said clerk, held in his hands $400 belonging to appellant, proceeds of the last-mentioned sale, and also held in his hands $210, his (the minor's) share of the proceeds of the Golliday property, which last sum he owed the appellant individually, and which he had held ever since the sale in 1898. Appellant, as shown by the evidence, owed his brother, Harper Lake, a sum of money on account of borrowed money, and the latter, wishing to be repaid, suggested that they come down from Memphis and get this money from appellee. When appellant asked appellee for the money, he refused either to turn over the $400 or to pay appellant the amount individually owed, unless the appellant would secure the removal of his disabilities, and told him he had better get a lawyer, or go to see the chancellor. Appellant secured an attorney to prepare the papers, and on the 24th day of June, 1899, a petition was prepared by his attorney, as his next friend, to secure the removal of his disabilities, and a decree was entered the same day so attempting to remove them, and the same day he made the second deed, being about twenty years of age then.

Appellee, of course, as appears from what has been recited, had full knowledge of the minority of appellant, and of all the transactions which we have set out above. This decree having been obtained attempting to remove the disabilities of ap-

pellant, appellee paid appellant the whole amount of money in his hands; appellant being a minor at the time. Appellant immediately went to St. Louis, where, within a few months, he very naturally spent the entire amount; in other words, wasted and squandered the whole of the money so paid over to him whilst still a minor. When he reached twenty-one years of age, he consequently had no part of the consideration of either of these deeds; the second deed also being one he made while he was still a minor to appellee, after the alleged removal of his disabilities. Appellant testifies that he had no idea that he could disaffirm the deed to his interest in the Golliday property until a few days prior to the filing of this suit, when he was so told by his attorney, and that he would not have signed said deed if he had known that he had a right to disaffirm it. There is no evidence whatever in the record showing that the appellant misled or deceived the appellee by anything said or done by him. No evidence whatever of any fraud or misrepresentation or deception in the case is shown by the record, on which any estoppel of the minor can be worked out on the long-settled and well-established principles of law applying to transactions with infants.

Appellant has never lived in the community, Grenada, since these transactions occurred, has never been about the property since, and has never had any conversation with appellee since that time. There is no evidence whatever in the records that appellant has ever done anything since he became of age to ratify these deeds. The record presents two questions, purely of law: First. Are the proceedings seeking to secure the removal of his disabilities, taken in June, 1899, valid? Second. If invalid, is the minor, appellant, estopped from recovering his property? The court below held that, whether the proceedings were valid or invalid, appellant was estopped. From that decree this appeal is prosecuted.

The proceedings to remove the disability of a minor are governed by the provisions of sections 493 and 494, Ann. Code 1892. These sections are in these words:

"Sec. 493. The chancery court of a county in which a minor resides may remove the disability of his minority.

"Sec. 494. The application therefor shall be made in writing by the minor, by his next friend, and it shall state the age of such minor and the names and place of residence of his parents, and, if he has no parent, the names and places of residence of two of his nearest kin within the third degree, computed according to the civil law, and the reasons on which removal of the disability is sought; and, when such petition shall be filed, the clerk of the court shall issue the proper process as in other suits, to make the proper parties defendant, which shall be executed and returned as in other cases; and any person so made a party, or any other relative or friend of the minor, may appear and resist the application."

Section 494 of the Annotated Code of 1892 thus expressly provides that such petition, by the next friend of the minor, in writing, shall state the names and places of residence of his parents, and, if he has no parent, then, and then only, the names and places of residence of two of his nearest of kin within the third degree, etc., and directs the clerk to issue proper process to make the proper parties defendant; and the reason for this is contained in the last clause of section 494, where it is stated, "and any person so made a party, or any other relative or friend of the minor, may appear and resist the application." In other words, the object of the statute plainly is to protect the minor from any injury that might accrue to him, either from an indiscreet application, or from having an irregular or void decree entered. It is simply one of the many safeguards which the law most wisely throws around minors as being incompetent to manage their own affairs. Manifestly parents are directed to be cited as the ones most proper so to protect the minor, and they are the "proper parties defendant," referred to by the statutes, where they are, or either of them is, alive. The nearest of kin are not to be summoned as proper parties defendant if the parents are alive and capable of acting. The record in this case shows that the father of this minor was alive, and lived

in another county not very distant from Grenada county, residing there. It further shows that he was not summoned at all, never appeared, and had nothing to do with the proceedings.

We think it is clear, from the purpose and object of this statute, that the father was not only a proper party defendant, but an absolutely necessary party defendant, the most necessary who could have been summoned; and therefore, for this second reason, these proceedings are absolutely null and void. Having ascertained that all the proceedings taken for the purpose of removing the disabilities of this minor were not simply irregular, but were absolutely null and void, for the reason stated above, it is, of course, competent to assail such proceedings, thus absolutely null and void, anywhere. In the case of *Marks v. McElroy,* 67 Miss. 545, 7 South. 408, a case decisive here, it was said: "The power conferred by our Code upon the chancery court to remove the disabilities of minors is not judicial in its character. It may be exercised by the Legislature without the intervention of other authority, or committed to any officer or commission having no judicial authority. The relief sought is private in its character, affecting no right of others. The privilege and the method of availing of it are created and defined by the statute, and the proceedings are valid only when in conformity to its regulations. Under such circumstances the court but exercises a statutory power, and it is incumbent upon one relying upon the decree to show that the court had acquired jurisdiction under the law. No presumption of jurisdiction arises from the mere fact of its exercise." This proposition is supported by a long list of authorities cited in the very admirable brief of learned counsel for appellant, to which reference can be had, both from this state and from other states. See *Howry v. Calloway,* 48 Miss. 587, in this connection.

Speaking of the necessity of service of process on the three nearest relatives, where they are to be sommoned before a sale of the property of a ward, Judge CAMPBELL said, in *Temple v. Hammock,* 52 Miss. 360: "The service of process on the three

nearest relatives, if there be any in the state, is a condition precedent to the exercise of the power by the court to order a sale of the property of the ward." And let it be noted that this was said of the exercise of a power of which the chancery court had, under the Constitution, full jurisdiction. There is but one thing for the court to do in cases of this sort, and that is to follow strictly the plainly marked out directions of the law. As said by Judge PEYTON, in *Koch v. Bridges,* 45 Miss. 258: "There is no more propriety in dispensing with one positive requirement than another. A whole statute may be thus dispensed with when in the way of the caprice or will of a judge. . . . It is dangerous to attempt to be wiser than the law, and when its requirements are plain and positive the courts are not called upon to give reasons why it was enacted." See, also, *Gibson v. Currier,* 83 Miss. 254, 35 South. 315, 102 Am. St. Rep. 442. The cases of *Ames v. Williams,* 72 Miss. 775, 17 South. 762, *Gusdorfer v. Gunby,* 72 Miss. 312, 16 South. 432, *Johns v. Harper,* 61 Miss. 142, and other cases cited by learned counsel for appellee in his most excellent brief, are entirely aside from the point under consideration here.

Learned counsel for appellee very properly conceded, what has been thoroughly settled by all well-considered cases in this country and in England, that a minor, who has squandered the consideration of a contract made by him while a minor, is not required, as a condition of disaffirming his deed, to return the consideration so squandered or to place the other party *in statu quo.* To do this would be to nullify, absolutely, the right of disaffirmance. His right to disaffirm his deed is a paramount and supreme right, bottomed on the very soundest and wisest public policy, and is a right to which no such condition is anywhere attached, or can be attached, without the abrogation of the protection thrown by the law around the exercise of the right. In *Brantley v. Wolf,* 60 Miss. 432, this matter was definitely put at rest in this state, where CHALMERS, J., speaking for the court, said: "If the minor has in possession any of the con-

sideration received when he disaffirms his contract, or after he becomes of age, he must return it. . . . But, if he has lost or squandered the consideration during minority, this is nothing more than the law expects of him, and he cannot be required to purchase the right of reclaiming his own by still further abstractions from his estate." And this doctrine was emphatically reaffirmed in *Harvey v. Briggs,* 68 Miss. 60, 8 South. 274, 10 L. R. A. 62, and the erroneous dicta in *Hill v. Anderson,* 5 Smedes & M. 216, and *Ferguson v. Bobo,* 54 Miss. 121, repudiated. See *Englehardt v. Pritchett,* 40 Neb. 195, 58 N. W. 852, 26 L. R. A. 177, 42 Am. St. Rep. 665, and the authorities there cited, to the same effect. The same rule is emphatically declared by the supreme court of the United States in the case of *MacGreal v. Taylor,* 167 U. S. 688, 17 Sup. Ct. 961, 42 L. Ed. 326, where the great court says: "It is well settled that it is not a condition of the disaffirmance by an infant of a contract made during infancy that he shall return the consideration received by him, if prior to such disaffirmance, and during infancy, the specific thing received has been disposed of, wasted, or consumed, and cannot be returned." And a little further along it is said: "If the consideration has passed from his hands, either wasted or expended during his minority, he is not thereby to be deprived of his right or capacity to avoid his deed, any more than he is to avoid his executory contracts. . . . It is not necessary that the other party should be placed *in statu quo.*"

To hold otherwise, as said by Judge CHALMERS, would be "to practically strike down the shield which the law, by reason of his youth and inexperience, throws around him;" and, as further remarked by that learned judge, "to squander the consideration during his minority is nothing more than the law expects of him," a minor; and it is just because minors do nearly always so squander the consideration received by them during minority that the law has, in its wisdom, in the protection of him against the natural tendencies and indiscretions

of youth—"the careless lapse and struggles of youth"—given him the right to disaffirm, unfettered by the condition that he shall return the squandered consideration. Indeed, it would seem perfectly idle to cite authorities on a proposition so utterly elementary, and which radicates itself in the very groundwork, in the spirit and purpose, of the doctrines of minority. But for an inadvertent dictum by Calhoon, J., in his specially concurring opinion in *Commander v. Brazil*, 88 Miss. 668, 41 South. 497, 9 L. R. A. (N. S.) 1117, which dictum was made by the chancellor in this case, very unwisely, the reason, in part, of his decision, this point would not need restating. No authority is cited by Justice Calhoon; and the remark is pure dictum, because no such remark is made in the opinion of the court rendered by Mr. Justice Mayes. That it is dictum is perfectly obvious from the evidence in the case, which shows that a return of the consideration by the minor had nothing to do with the case. Certainly, if any such announcement had been made in the opinion of the majority, I most certainly would have dissented from it. That the announcement is manifestly unsound is shown by the authorities cited *supra* from this state and others and from the United States supreme court; and I have cited these authorities, and will close this discussion with the citation of three others only, in order that this dictum may no further mislead, as it evidently did mislead the chancellor in the court below.

The other three authorities which I refer to are Parsons on Contracts, vol. 1 (9th Ed.) p. 365, note 1, and the authorities in that note collected. It is there distinctly stated that "if an infant has lost, wasted, or destroyed what he received, he is usually allowed to recover what he gave, without deduction." And again it is said: "But if it is no longer in the infant's possession, the adult is without remedy"—citing *St. Louis Ry. Co. v. Higgins*, 44 Ark. 293, and *Dill v. Bowen*, 54 Ind. 204, which two cases are leading cases on the subject, and citing other authorities. And again it is said in the same note that in equity

the prevailing view is that the rule requiring a return of the consideration does not apply when the infant no longer has the consideration, citing our own case of *Brantley v. Wolf,* 60 Miss. 420. See, also, note X at the bottom of said page 365, *supra,* with the host of authorities therein set out, far too numerous for citation, supporting the same doctrine.

I propose now to refer, in concluding this discussion, to a very early, and then to a most recent, statement on the subject. In Tyler on Infancy, in the edition published in 1868, the true doctrine is very clearly stated in section 37, at pages 77 and 78, of that work. He there states the doctrine as follows, quoting with approval the very accurate statement of the rule in 1 American Leading Cases, p. 115, in the note to the celebrated leading case of *Tucker v. Moreland,* from the United States Supreme Court: "If the infant has parted with the consideration received or expended the money lent during infancy, it would seem, from authority, that if, on coming of age, he repudiate the contract, the adult would be remediless. It is laid down in American Leading Cases, by Hare and Wallace, as follows: 'But if he [the infant] has during infancy wasted, sold, or otherwise ceased to possess the property, these acts done in infancy cannot be a conversion, because he then held the goods under an executory transfer of property, which authorized him to use and dispose of them as owner, and a refusal after age to deliver on demand, when he has not the goods, is not a conversion, and trover, therefore, will not lie; and this just and sound distinction is taken in the very clear opinion in *Fitts v. Hall,* 9 N. H. 441, 446, and recognized in *Robbins v. Eaton,* 10 N. H. 562, 565, and *Boody v. McKinney,* 23 Me. 517, 525, 526. Nor can detinue be maintained, for it lies not where the goods, though once in possession, have been parted with in a manner authorized by law. In such case, therefore, he may avoid the contract without being made liable for the consideration in an action sounding in tort.' 1 Am. Leading Cases, 115. To repeat, then, the rule would seem to be that, if the contract is executory

on both sides, the disaffirmance of the infant releases the adult from his obligation, and thus both parties are placed *in statu quo*. If the contract has been executed in whole or in part by the infant, but is wholly executory on the part of the adult, the infant, on coming of age, may repudiate the transaction and recover the consideration paid. But if the contract has been executed by the adult, and the infant has the property or consideration received at the time he attains full age, and he then repudiate the transaction, he must return such property or consideration, or its equivalent, to the adult party. If, however, the infant has wasted or squandered the property or consideration received during infancy, and on coming of age repudiates the transaction, the adult party is remediless."

The most recent, as well as, in the judgment of this writer, the most accurate and comprehensive, statement of this rule, is to be found in the second edition of the Am. & Eng. Ency. of Law, vol. 16, pp. 287, c. 293 (g). They are as follows:

"c *Disaffirmance and Avoidance*—(1) Right of Infants to Repudiate their Contracts.—The right of an infant to avoid his contracts is one conferred by law for his protection against his own improvidence and the designs of others, and, though its exercise is not infrequently the occasion of injury to those who have in good faith dealt with him, this is a consequence which they might have avoided by declining to enter into the contract. It is the policy of the law to discourage adults from contracting with infants, and the former cannot complain if, as a consequence of their violation of this rule of conduct, they are injured by the exercise of the right with which the law has purposely invested the latter, nor charge that the infant, in exercising the right, is guilty of fraud."

"(g) *Restoration of the Consideration*—aa. At Common Law—(aa) Statement of the Rule.—To give effect to an infant's disaffirmance of his contract, it is not necessary that the other party should be placed *in statu quo;* for, if the law in every case required restitution of the consideration as a condition pre-

cedent to the disaffirmance of the contract, it would often result in accomplishing indirectly what it expressly says shall not be done directly, and the very purpose of the law in permitting infants to avoid their contracts would be defeated. For example, if an infant borrows money and improvidently disposes of it, as the law, from his want of discretion, presumes he may do, this very indiscretion which the law endeavors to shield and protect becomes the means of fastening the imperfect obligation upon him, and his inability to refund what he has borrowed affirms his contract to repay it.

"(bb) *When the Consideration has Passed out of the Infant's Hands.*—Consequently, if the consideration has passed from the infant's hands, either wasted or expended during his minority, so that he cannot restore it to the party from whom he received it, he is not deprived of his right or capacity to avoid the contract, or required to return an equivalent therefor."

This last citation is supported by a multitude of authorities, including *Brantley v. Wolf,* 60 Miss. 432, *supra,* and *Harvey v. Briggs,* 68 Miss. 60, 8 South. 274, 10 L. R. A. 62, *supra.* Many other authorities, directly in point, are set out in the brief of the learned counsel for appellant. The chancellor misconceived the cases of *Commander v. Brazil,* 88 Miss. 668, 41 South. 497, 9 L. R. A. (N. S.) 1117, *supra,* and *Ostrander v. Quin,* 84 Miss. 230, 36 South. 257, 105 Am. St. Rep. 426. These cases decide only, as stated by Mr. Justice MAYES, in the opinion in the former cases, that "when a minor has reached the stage of maturity in years and physical appearance calculated to deceive a person of ordinary prudence, and the minor does deceive such person as to his age, and asserts that he is of full age, and induces a contract to be made with him, and accepts the benefits of his contract, he will not be heard at any future time to deny that he was of full age at the time the contract was executed, and thereby escape the obligation of his contract, where the party dealing with him has dealt with him believing him of full age." These two cases are cases merely and simply of a minor will-

fully, fraudulently, and corruptly representing himself to be of full age, and thus obtaining, because of such misrepresentation, consideration which he would not have gotten, but for such deception and fraud practiced upon the other party, who himself acts in good faith, without knowledge of his infancy.

In this case the citation of these authorities is perfectly idle, because the appellee knew all about the minority of the appellant, and dealt with him without one solitary misrepresentation on the part of appellant having been made to him. These cases have no sort of application to the case at bar. Indeed, the learned chancellor in this case stated in his opinion that "the sole question is as to whether he shall be held bound by his conveyance made by a minor, or, rather, whether or not the decree of the chancellor, removing his disabilities of minority, is invalid." The chancellor then proceeds, however, to refrain from deciding whether the proceedings attempting to remove the disabilities were valid or invalid, but rests his decision upon this ground: Whether such proceedings were valid or invalid, that those proceedings and they alone estopped the appellant. It was correct enough, if he was going to hold the minor estopped, to rest it upon these proceedings alone, since the record does not show any fraud or misrepresentation or deception practiced by the minor, as to his age or otherwise. But the fatal error in the chancellor's reasoning was that these proceedings alone, even though utterly void, could constitute an estoppel of the minor to file this bill within the principles of law, which announce what estoppel is and when it is to be applied. It is true that this court has aligned itself, in *Ferguson v. Boho,* 54 Miss. 121, with those courts which hold that in exceptional cases the minor may be estopped by his conduct, upon the principle, quaintly and accurately put by a great English judge, Lord Cowper, that "a minor old enough and cunning enough to contrive and carry out a fraud, he ought to make satisfaction for it." *Watts v. Cresswell,* 9 Vin. Abr. 415; s. c. 3 Eq. Cases Abr. 515.

But, in order to raise estoppel out of the evidence against the

minor, that evidence must plainly show, not doubtfully or vaguely, but clearly and convincingly, the presence of actual, active, and willful fraud and misrepresentation, as held in *Demourelle v. Piazza,* 77 Miss. 433, 27 South. 623, which fraud and misrepresentation must have operated to deceive and mislead the other party, to his damage. The appellee here was not misled, was not deceived, as to the age of appellant. There is absolutely nothing in the record on which to predicate an estoppel, save only the proceedings attempting to remove his disability. Whenever it is conceded or shown that these proceedings were, as we have shown them to be, absolutely null and void, then it is idle to talk of using the mere decree, and that only as a means of estoppel. This would be an error, fatal in a twofold aspect: First, it would be treating a decree absolutely null and void as if it were valid; and, second, it would raise an estoppel, not out of the conduct of the minor, affirmatively shown to have been characterized by willful and active fraud and misrepresentation, but out of the mere action of a court, and that action wholly void. That a void decree like this cannot have life infused into it for any purpose, much less for the important purpose of working an estoppel against a minor, is thoroughly settled. Mr. Freeman, in his work on Judgments (section 117, 3d ed.), says: "A void judgment is in legal effect no judgment at all. By it no rights are derived. From it no rights can be obtained. Being worthless in itself, all proceedings under it are equally worthless. It neither binds nor bars any one. All acts performed under it and all claims flowing out of it are equally worthless." See *Lester v. Miller,* 76 Miss. 309, 24 South. 193; *Harris v. State,* 72 Miss. 960, 18 South. 387, 33 L. R. A. 85, and a multitude of authorities not necessary to be cited in support of so elementary a proposition.

The authorities cited by the learned counsel for appellee with respect and to the effect that one who has received the benefits of a void judgment or decree cannot be heard afterward to assail such decree, many of which relate to the reception of proceeds

·of lands sold belonging to decedents, are perfectly sound deci-
sions applied to the facts of those cases, but are not in point here
at all.

The last contention urged by learned counsel for appellee is
that the appellant ought not to be permitted to file this bill be-
cause he waited seven years after attaining his majority.　There
is no evidence whatever, as stated before, of anything said or
done by the appellant, during this lapse of time, out of which
an estoppel proper can be worked, and it has been settled in this
state, beyond any possible discussion, that no period of time,
.short of the bar of the statute of limitations, can be used as a
mere bar of limitations, or as furnishing any laches which will
·constitute an equitable bar to the bringing of a suit.　See *Cox
v. Mortgage Co.,* 88 Miss. 97, 40 South. 739; *Hill v. Nash,* 73
Miss. 862, 19 South. 707; and *Houston v. Building Association,*
·80 Miss. 31, 31 South. 540, 92 Am. St. Rep. 565.　In that case
we said, and reiterate it once more: "It was the right of com-
plainants, so far as the mere delay is concerned, to file their bill
on the last day before the expiration of ten years, just as fully
as if they had filed it on the first day after the sale."　'In other
words, the law in this state on this subject is now, and has been
for many years, that no period, short of the bar of the statute
·of limitations, can operate as a limitation on the right to sue.
Nor does the doctrine of mere laches ever operate in this state
to bar the bringing of a suit; but the right to bring a suit, either
in law or in equity, may be not barred as of limitation, but cut
off as of right and equity, if the facts in the case shall show
clearly that the conduct of the party suing has plainly been such
as to operate against him an estoppel within the meaning of the
well known laws of estoppel.

This particular case operates, of course, a great hardship upon
the appellee, who is not shown to have taken any advantage what-
ever of the appellant, or to have paid anything less than full
value for the land, or to have been guilty of any inequitable con-
duct.　But it is not the first case, by many thousands, in which,

adults, dealing with minors, have done so at great loss. The law cares nothing in the world about this appellee, nor this appellant. It cannot take any account whatever of the hardship in any case. If it did, there would be no law as a fixed rule or a guide on any question. But the law does care, and properly cares everything, about the preservation, unimpaired, of the great paramount right of minors to disaffirm, under proper circumstances, their contracts entered into during the period of indiscretion and incapacity, which exists before their arrival at majority. It is of the very highest necessity that this right of minors shall be preserved. It is of no consequence whatever to the law whether its preservation entails hardship or not. With that the courts have and can have no concern.

When all, however, is granted that can be claimed as to the good faith of appellee, the case is not advanced one step towards its solution. Whilst it is true that there is no evidence here of any overreaching or fraud on the part of the appellee, it is equally true, as to that, that this record shows that appellant wasted the whole consideration during his minority, and not after he reached his majority; that he never had another word of conversation with the appellee after the second deed was made; that he did not live in Grenada, but in Memphis; that he never was about the property involved, so as to be charged with the knowledge of any improvements being put thereon. In short, the record shows this appellant to have had no communication with the appellee, and to have said or done nothing with regard to this transaction, after the second deed was made in 1899.

The case turns, therefore, not on any good faith on the part of appellee, but on the utter absence of any willful, active, fraudulent conduct on the part of appellant which could furnish any estoppel against appellant. It is idle to talk about the appellant having procured the invalid decree. The appellant made no effort whatever to get any decree until the appellee told him the money would not be paid until the disabilities were removed

and sent him to the chancellor. The suggestion that his disabilities had to be removed, a perfectly proper suggestion, was made by the appellee to the appellant. Hardship in the case to the appellee results from the voidness of the decree, not from anything appellant has said or done; and, as previously shown, it would be mockery of justice for us to decide that the decree was absolutely null and void, and then permit the appellee to use such void decree as if it were valid.

This whole case may be shortly put in one simple statement, and that statement is this: That the presence of good faith on the part of Perry, the appellee, cannot create the capacity to contract on the part of Lake, the appellant.

It follows that the decree of the learned court below is erroneous, and it is reversed, and the case remanded, to be proceeded with in accordance with this opinion.

*Reversed.*