473 So.2d 157 (1985)
STAR CHEVROLET COMPANY
v.
Kevin Green, a Minor, by Next Friend Jim Green.
No. 54844.
Supreme Court of Mississippi.
July 10, 1985.
*158 Thomas M. Matthews, Jr., Parsons & Matthews, Wiggins, for appellant.
Fred Mannino, Page, Mannino & Peresich, Biloxi, for appellee.
Before WALKER, P.J., and DAN M. LEE and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:

I.
We are asked in this case to reexamine the historical shield which the law throws around a minor to protect him by reason of his youth and inexperience from the consequences of entering into a contract with an adult. Kevin Green, a minor from Ocean Springs, disaffirmed a contract for purchase of a 1979 Camaro after the car developed problems. Star Chevrolet Company, Wiggins, Mississippi, refused to return his money unless the vehicle was restored to its original condition. Kevin, through his father, filed suit for rescission of the auto sales contract in the Circuit Court of Stone County. While suit was pending, the Camaro was involved in an accident, rendering it a total loss. The insurance company paid the loss to Kevin, who transferred title to the insurance company for salvage value under the contract.
Star Chevrolet Company obtained a transfer of the proceedings to chancery court. From the decision in favor of the minor, Star Chevrolet appeals, assigning that the chancellor erred in:
I. Failing to grant a motion for summary judgment, since appellee's pleadings were not reformed when this matter was transferred from circuit to chancery court;
II. Finding that the vehicle in question was a luxury and not a necessity to the minor;
III. Finding that a tender had been made by the minor sufficient to require repayment; and
IV. Finding that the car had been "wasted" by the minor, making it unnecessary for him to return the car or its equivalent in order to rescind the contract.
For the reasons set forth below, we affirm.

II.
Kevin Green was 16 years old, about 5'4" tall, and weighed about 115 pounds on August 14, 1981, when he purchased the Camaro from Star Chevrolet. He was accompanied by a Mr. McGillivray, a family friend, who helped negotiate the purchase of the car. Title to the Camaro was in Kevin's name, and the $4,642.50 purchase price was drawn from his savings and from loans from a bank and his grandmother. The question of Kevin's age was not raised by himself or the dealership. It is undisputed that, at the time of sale, Kevin did not falsely represent himself to be of full age; therefore Star Chevrolet contracted with him at its peril. Cf. Johnson v. McAdory, 228 Miss. 453, 88 So.2d 106 (1956).
Kevin brought the car back to Star Chevrolet to repair several problems. He later discovered that the front end of the frame was bent, and that the car contained a Pontiac 305 hp. engine instead of the Chevrolet 350 hp. engine that it was supposed to have.
*159 Some time prior to November, 1981, Green's Camaro became inoperable due to a blown head gasket. The disabled car was parked in front of his Ocean Springs home for some four or five months. On November 16, 1981, Green, through his attorney, Fred Mannino, informed Star Chevrolet that, as a minor, he was disaffirming the contract and demanding the return of the funds he paid for the automobile. On December 11, 1981, Mannino wrote Star Chevrolet that "Kevin is willing to return the automobile for a full refund of his money." Star Chevrolet would not accept the car unless it was restored to its original condition. Therefore, suit was filed on the minor's behalf on January 27, 1982, in the Circuit Court of Stone County.
The car sat up for four or five months in the middle of Kevin's senior year in high school. Finally, Kevin fixed the head gasket himself and, having obtained insurance, began to drive the car again. In June, 1982, the Camaro was destroyed in an accident. The insurance company paid Kevin $5100 under the policy and he signed title to the vehicle over to the insurance company for salvage value.
On June 30, 1982, the circuit court granted a motion in limine ordering Star Chevrolet to refrain from offering any evidence relating to any insurance coverage or proceeds paid for the physical damage to the automobile. The court ordered that insurance was irrelevant to this action and no reference should be made thereto.
Star Chevrolet moved the circuit court to transfer the cause to chancery court because the case involves the rights of a minor and allegations by Star Chevrolet of unjust enrichment. The circuit court sustained this motion and the case was transferred to chancery court on July 2, 1982.
A motion to expedite the refiling of the complaint and answer and to set a trial date was filed on behalf of the minor, pursuant to Miss. Code Ann. § 11-1-39, alleging that a trial date had been set and the parties were poised for a trial prior to transfer. Star Chevrolet answered by alleging that Green had failed to reform his pleadings within 30 days following transfer of the case from circuit to chancery court, in violation of § 11-1-39.
At trial, the chancellor overruled Star Chevrolet's motion for summary judgment on the ground that the case was filed after the effective date of the Mississippi Rules of Civil Procedure so that the distinction between the pleadings and circuit and chancery court had been leveled. The chancellor sustained the minor's motion to expedite by accepting the documents transferred in lieu of requiring a refiling. The chancellor also refused to disturb the circuit judge's order in limine precluding reference to insurance proceeds.
Kevin testified that he lived about 6 miles from school and about 1 mile from work. He used the Camaro to go back and forth to school and to work. When he did not have the car, he used a car pool to get to school and work. During the busy season, February to May, he worked 7 days a week at his job at Gulf Hills Dude Ranch. The period during which his car was disabled overlapped with this busy season. He testified that before he had a car and when his Camaro broke down, he had no problem getting to and from work or school, relying on car pools.
On cross and over objection, Kevin admitted that after he wrecked the car, the insurance company paid him $5100, $500 more than the original purchase price. He used this money to buy another car. He signed the title to the car over to the insurance company at the time of the settlement, without telling the company that he had rescinded the contract with Star Chevrolet.
Robert Regan, Jr., manager of Star Chevrolet, testified that when Kevin's father called him to demand his money back, he, Regan, refused to send Star Chevrolet's wrecker from Wiggins to Ocean Springs to pick up the disabled car. Instead, Regan demanded that Kevin return the car together with title. Regan admitted that before suit was filed his position was that he would take the car back provided it was returned to its original condition. After *160 the vehicle was wrecked, Regan testified that he would have taken the car back and given Green his money, if Star Chevrolet received the insurance proceeds. He said that in his dealings with young men between 15 and 20 years old, it was his personal observation that vehicular transportation had become a necessity for them.
In rebuttal, Kevin testified that no one at Star Chevrolet told him that if he would return his car, they would return his money.
The chancellor awarded a judgment against Star Chevrolet for the purchase price of the vehicle. The court applied the rule of law that he who contracts with a minor does so at his own peril. It was ruled that the minor had "wasted" the vehicle, and, as a result, there was nothing for him to surrender to Star Chevrolet. The chancellor found that even if the minor squandered the consideration, he did not have to return its equivalent in order to rescind the contract. The chancellor ruled that the existence of insurance had no bearing on the case, because Star Chevrolet was not privy to the insurance contract.

III.

REFORMATION OF PLEADINGS
When a case is transferred from circuit court to chancery court, Miss. Code Ann. § 11-1-39 (1972) requires the complaining party to thereafter file amended pleadings within 30 days with the defendant being required to plead within 30 days thereafter unless the time for such shall be restricted or extended by the court.
Appellant argues that this Court should follow Warren v. Smith-Vaniz, 382 So.2d 1088 (Miss. 1980), where this Court stated that in the event a matter is transferred from circuit to chancery court, the statutory requirements are mandatory and if the pleadings are not reformed within thirty (30) days, the suit should be dismissed with prejudice. Appellant admits that the Mississippi Rules of Civil Procedure had been effective for one month at the time the matter was originally filed, but maintains that Smith-Vaniz is still controlling so that the appellee's failure to reform his pleadings requires dismissal with prejudice.
Appellee contends that Smith-Vaniz is no longer good law after Commercial National Bank v. Fleetwood Homes, 398 So.2d 659 (Miss. 1981), in which the Court declined to follow what it termed dictum in Warren that the case should be dismissed with prejudice, but instead ordered that the case should be dismissed without prejudice.
In Central Grain and Supply Co. v. Jesco, 410 So.2d 879 (Miss. 1982), this Court, per Justice Walker, held that while the trial court should have dismissed the case for non-compliance with § 11-1-39, reversal was not required because the appellant suffered no prejudice in the course of the trial and no good purpose would be served by requiring the parties to undergo another extensive trial. Id. at 881.
We find the appellant's first assignment of error to be without merit, in view of the fact that subsequent cases have rejected the dictum in Warren v. Smith-Vaniz. We rule that, although dismissal without prejudice may have been warranted under Fleetwood Homes, reversal is not required in this case since, as in Central Grain & Supply, no prejudice was shown to have been suffered by appellant. Therefore, this assignment of error is rejected.

IV.

IS A VEHICLE A NECESSITY FOR A MINOR?
It has long been settled that the contracts of infants or minors impose no liability upon them which is not voidable at their election, except for contracts for necessities, and in some special cases of actual and active fraud. Johnson Motors, Inc. v. Coleman, 232 So.2d 716, 720 (Miss. 1970); Mellott v. Love, 152 Miss. 860, 865, 119 So. 913 (1929); Brent v. Williams, 79 Miss. 355, 358, 30 So. 713 (1901); Decell v. Lewenthal, 57 Miss. 331, 336 (1879). The general view is that a minor's liability for necessities is based not upon his actual contract to pay for them, but upon a contract *161 implied by law, or in other words a quasi contract. 42 Am.Jur.2d Infants, § 65 at 66; 2 Williston Contracts 3d § 240. In this state the question of whether an item is a necessity is a mixed question of law and fact to be determined by the trial court. Decell v. Lewenthal, supra, at 336.
This Court has upheld a minor's disaffirmance of a contract of sale of an automobile. Johnson Motors v. Coleman, supra; Bell v. Smith, 155 Miss. 227, 124 So. 331 (1929); and Rhyne v. Miller, 133 Miss. 463, 97 So. 758 (1923). Our holding in Johnson, supra, acknowledged the necessities exception to the general rule but did not expressly pass on the question. 232 So.2d at 720.
A recent annotation on whether an automobile or motorcycle is a necessity for an infant is found at 56 A.L.R.3d 1335 (1974). The annotation states:
Although it has been argued in several cases, sometimes successfully in the trial court, that the changing times and habits, and the current affluence of the common man, have, as evidenced by the tremendous popularity of ownership of motor vehicles, rendered the automobile a practical necessity in today's society, the appellate courts have, so far, resisted this argument as a general proposition, and thus have uniformly held that automobiles, trucks, and motorcycles used for pleasure purposes do not come within the classification of necessaries.
... .
Some courts are particularly impressed with the status of an automobile as a necessary where the infant in question is married, supporting a family from his earnings, and using the vehicle in connection with his employment. Most of the cases to date, however, have declined to hold an automobile or truck used in securing a livelihood to be a necessary. Moreover, courts have been loath to view as necessaries automobiles used merely for transportation to and from work (such use presumably being in addition to pleasure and other convenience uses), especially where there was shown to be no compelling need for the infant to provide himself with private transportation.
Id. at 1339.
In the three cases upholding a minor's right to rescind an auto sales contract, we have rejected by implication the position that an automobile is a necessity. We refuse to hold that, even in modern times, an automobile is per se a necessity for a minor. This ruling is reinforced by the facts in this particular case which show that the minor used car pools to get to and from school and work, including the busy season when the Camaro was inoperable.
We reject Rose v. Sheehan Buick, Inc., 204 So.2d 903 (Fla.App. 1967), cited by appellant for the proposition that an automobile is a necessity for a minor. In that case, the appellate court deferred to the chancellor's ruling as a pure question of fact, while in this state whether a particular item is a necessity is a mixed question of law and fact. Decell v. Lewenthal, supra. We further note that we cited Rose with disapproval on other issues in Johnson Motors v. Coleman, and do so here. For the reasons above, this assignment of error is rejected.

V.

WAS THERE AN ADEQUATE TENDER?
Upon disaffirmance of a minor's contract, he is required to return the consideration received by him if he still has such consideration in his possession, or if it is within his powers to do so. Bell v. Smith, supra; Lake v. Perry, 95 Miss. 550, 566-71, 49 So. 569, 571-73 (1909); Brantley v. Wolf, 60 Miss. 420, 433-34 (1882); 42 Am.Jur.2d Infants, § 97 at 95; 43 C.J.S. Infants, § 175 at 468. This requirement can be complied with not only by an actual return of the consideration but also by a tender or offer to return it. Bell v. Smith, supra, 155 Miss. at 234-35, 124 So. at 332; 42 Am.Jur.2d Infants, § 99 at 97.
From the time Kevin disaffirmed the contract in November, 1981, until suit was filed, Star Chevrolet refused to fully *162 refund the purchase price unless the Camaro's blown head gasket was repaired. This position was erroneous as a matter of law. We held in Johnson Motors v. Coleman, supra, that depreciation, finance charges, insurance charges, etc. during the period the minor used the automobile were not recoverable by the dealer. 232 So.2d at 721. Likewise, Kevin's duty to tender the vehicle was not contingent upon its restoration to the condition at the time of sale.
Strict tender by Kevin was not necessary under these circumstances where the party to whom performance is due refuses to perform on his part, or imposes a request which he has no right to make. Lauchly v. Shurley, 217 Miss. 728, 732, 64 So.2d 898 (1953); V. Griffith Chancery Practice 2d § 523 at 537 (1950); 42 Am.Jur.2d Infants § 99 at 97. We refuse to hold that Kevin's tender was inadequate because he failed to engage a wrecker to transport the vehicle to Wiggins, when it appears that to do so would have been a vain or useless thing, since he would not have received the full refund to which he was entitled under law. Accordingly, we hold that the complaint for rescission, including the first letter of disaffirmance, sufficiently alleged an offer of tender.

VI.

HAD THE CONSIDERATION PASSED FROM THE MINOR'S HANDS?
Appellant contends that Kevin's minority in this case has been converted from a shield for protection into a sword for attack. It is asserted that appellee would be unjustly enriched if in addition to the insurance recovery already received, he were awarded a judgment for the full purchase price of the vehicle. Appellant insists that the law requires that it be placed in status quo, either by offsetting the minor's insurance recovery against the judgment or by reducing the judgment in the amount of the salvage value of the vehicle.
Appellee asserts that the law does not require a minor to place the other party in status quo by returning the consideration when the minor, through his inexperience and youth, has lost, squandered or destroyed the consideration.
It should first be noted that appellee invoked, and the chancellor followed, the collateral source rule by which an adverse party is not entitled to have the damages to which he is liable reduced by proving that the plaintiff has received or will receive compensation or indemnity for the loss from a collateral source. In other words, insurance in behalf of the plaintiff cannot be set up by the adverse party in mitigation of the loss. See Bowen v. Magic Mart of Corinth, 441 So.2d 548 (Miss. 1983); Preferred Risk Mutual Insurance Co. v. Courtney, 393 So.2d 1328 (Miss. 1981); Horton v. Brooks, 325 So.2d 912 (Miss. 1976). Therefore, we decline to consider the insurance proceeds received by the minor upon the destruction of the vehicle as an offset to the appellant's liability for the purchase price of the vehicle. Instead, our sole focus is upon whether or not the consideration, i.e. the vehicle, remained in the minor's hands during disaffirmance of the contract, or whether it passed from the minor's hands by squandering, destruction or loss.
Before reaching the precise question at hand, some general principles warrant restatement. First, the right of a minor to disaffirm his contract is based upon sound public policy to protect the minor from his own improvidence and the overreaching of adults. Lake v. Perry, 95 Miss. 550, 566, 49 So. 569, 572 (1909). It is the policy of the law to discourage adults from contracting with minors and the adult cannot complain if, as a consequence of his violation of this rule of conduct, he is injured by the minor's exercise of the right of disaffirmance, since this injury might have been avoided if the adult had declined to enter into the contract. Lake, supra, at 570, 49 So. at 573.
Second, if upon disaffirmance the minor has in his possession the specific property or any part of it which he received he must return it. Thus, where a minor repudiates an automobile sales contract while the vehicle *163 is still in his hands, he must tender the vehicle in order for his purchase price to be refunded. Bell v. Smith, supra; Rhyne v. Miller, supra. As noted before, the seller may not deduct from the refunded purchase price allowances for use and depreciation. Johnson Motors v. Coleman, supra.
Third, the general rule is that upon disaffirmance of a minor's contract, he is required to return the consideration only if it is still in his possession. The minor who disaffirms a contract is not obliged to return the consideration received by him or its equivalent where during his minority he has wasted, squandered, destroyed, used, or otherwise disposed of the consideration. Bell v. Smith, supra, 155 Miss. at 234, 124 So. at 331; Lake v. Perry, supra, 95 Miss. at 566-71, 49 So. at 571-73; Brantley v. Wolf, supra, at 432.
Finally, depreciation in the value of the vehicle due to the minor's misuse or neglect, short of intentional or grossly negligent act amounting to an independent tort, is not allowable by way of recoupment. In other words, the minor is not liable for damages due to the very improvidence and indiscretion of infancy against which the law seeks to protect him. See cases cited in Anno. 12 A.L.R.3d 1174, § 8 at 1198-1200 (1967). On the other hand, a minor may not use infancy, which is a shield for protection, as a sword for attack; such conduct by the minor amounts to fraud. See Evans v. Morgan, 69 Miss. 328, 12 So. 270 (1891).
Turning to the facts of this case, the minor clearly had the consideration, i.e. the vehicle, in his possession when he first notified appellant of the disaffirmance of the contract. Had appellant offered the minor, as the law required, a full refund of his purchase price, the minor clearly would have been required to return the vehicle. Johnson Motors v. Coleman, supra; Bell v. Smith, supra. Instead, the appellant did not, and while suit was pending the minor repaired the vehicle and began to use it. There is no hint in the record that the accident which destroyed the vehicle was the result of any deliberate design on the minor's part to fraudulently deprive appellant of that which would have placed him in status quo. For aught that appears in the record, the accident was caused by the carelessness and improvidence with which the law expects a minor to deal with his property. Disaffirmance at this point would have required the appellant to refund the full purchase price and the appellee, in turn, to return the damaged Camaro, since the law does not condition a minor's right to disaffirm a contract upon placing the other party in status quo, but only requires the return of whatever consideration remains in the minor's hands. Lake v. Perry, supra; Brantley v. Wolf, supra.
This case goes one step further. Prior to trial, the minor transferred title to the vehicle to the insurance company and used the proceeds to purchase another vehicle. The insuror obtained $1500 salvage value for the damaged Camaro. We are urged to offset the minor's recovery by the $1500 salvage value of the car on the ground that the minor had the duty to tender this consideration to appellant in order to receive a refund of the full purchase price.
We are persuaded that the appellant's contention is sound. In Fisher v. Taylor Motor Co., 249 N.C. 617, 107 S.E.2d 94 (1959), in facts remarkably similar to the case sub judice, the Supreme Court of North Carolina allowed the defendant a setoff in the amount of the salvage value of the vehicle upon the principle that the minor would be liable for any tortious disposition of the property after disaffirmance and before surrender to those from whom it was obtained. Likewise, in this case we hold that the minor is liable, and the appellant is entitled to a setoff, for the salvage value of the consideration which he intentionally conveyed away. Accordingly, the damages assessed against Star Chevrolet Company are reduced from $4,642.50 to $3,142.50.
AFFIRMED AS MODIFIED.
*164 PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and ANDERSON, JJ., concur.